## THE STATE ex rel. U. BON GEASLIN v. W. S. C. WALKER, Judge of Twenty-Second Judicial Circuit.

### In Banc, January 4, 1924.

1. **SALARY OF COURT REPORTER: According to Population of Circuit.** In determining the salary to which a court reporter of a judicial circuit composed of more than one county is entitled, the number of inhabitants of the circuit, and not the number in the most populous county of the circuit, is to be taken as the basis of calculation. Any other construction of the statute would be unreasonable, and render it inapplicable to many circuits.

2. ————: **Statute: $3,000.** The statute (Laws 1919, p. 713; Sec. 12670, R. S. 1919) provided: "Each court reporter shall receive salary as follows: In cities, or counties which now have and such as may hereafter have a population of sixty thousand or more, an annual salary of three thousand dollars . . . In counties having a population of forty-five thousand and less than sixty thousand inhabitants, an annual salary of two thousand five hundred dollars . . . In counties having a population of less than forty-five thousand inhabitants, an annual salary of two thousand dollars . . . *Provided, further,* that where a judicial circuit is composed of more than one county, such salary shall be divided among the counties and be paid by them proportional as the population of such counties bear to the entire population of the circuit." *Held,* that the classification was intended to be made upon the basis of the population of a circuit composed of more than one county, and not upon the basis of the population of the county having the largest number of inhabitants; and that the statute, when applied to the whole State, means that in all judicial circuits having sixty thousand or more, the salary of the official court reporter is three thousand dollars per annum; in all circuits having a population of forty-five thousand and less than sixty thousand, the salary is twenty-five hundred dollars; in all circuits having a population of less than forty-five thousand, the salary is two thousand dollars.

   *Held,* by WALKER, J., dissenting, that the statute, in so far as it attempts to fix the salary of court reporters in circuits composed of more than one county, is a meaningless patchwork of

words and furnishes no basis from which a conclusion of the amount of such salary may be determined.

*Mandamus.*

PEREMPTORY WRIT AWARDED.

*Smith & Zimmerman* for relator.

(1) The salary of the official court reporter is determined by the statute, and in judicial circuits where the population is in excess of 60,000, as in the twenty-second Judicial Circuit, the annual salary of the court reporter is fixed by the statute at $3000, payable in equal monthly installments out of the county treasuries of the counties composing the judicial circuit, on the certificate of the judge of the court in said circuit. Sec. 12670, R. S. 1919. (2) The unit considered in determining the population served by the official court reporter is the judicial circuit and not any county within the judicial circuit, whether there be one county or more than one in the judicial circuit. Secs. 12668, 12670, 12674, 1919. (3) The rule for the construction of statutes is that words and phrases shall be taken in their plain, ordinary and usual sense, and that the legislative intent should be ascertained from the language used in the statute, and in case of ambigous words and terms used in the statute, the court should interpret and construe the statute in a reasonable manner, keeping in view the legislative intent and purpose. Sec. 7058, R. S. 1919; State ex rel. v. Riley, 203 Mo. 175; State ex inf. v. Talley, 166 Mo. 529; Kenney v. McVoy, 206 Mo. 42, 65; Dudley v. Clark, 255 Mo. 586; St. Louis v. Christian Brothers College, 257 Mo. 552; Stack v. General Baking Company, 283 Mo. 411. The legislative intent, on the subject at hand, is revealed by a consideration of the history of legislation on this subject. Secs. 11244, 11250, 11252, R. S. 1909.

*James V. Billings* for respondent.

(1) The salary of the official court reporter is determined by the statute, and "in counties having a population of less than 45,000 inhabitants," as is the twenty-second Judicial District, "an annual salary of $2000, payable in monthly installments out of the county treasury on the certificate of the judge in whose court he is employed," and "provided further, that where a judicial circuit is composed of more than one county, such salary shall be divided among the counties and be paid by them proportional as the population of such counties bear to the entire population of the circuit." Sec. 12670, R. S. 1919. (a) In addition the sections of this article prescribe further fees and emoluments for the official court reporter for his various services, and likewise provide that where used certain fees shall be paid by the litigants for the reimbursement of such county for the compensation allowed such court reporter, and provide for the payment of the expenses of the official court reporter of such circuit while attending court therein other than his place of residence by the respective counties in said district in proportion to their respective populations. Secs. 12671, 12672, 12673, 12674, R. S. 1919. (2) The division served by the official court reporter is the judicial circuit. Secs. 12668, 12669, R. S. 1919. (3) The unit of population served by the official court reporter for the purpose of compensation, *pro* and *con,* as provided for by the statutes is the county in the judicial district, whether there be one entire county or more than one county in said circuit. Secs. 12668, 12669, 12670, 12671, 12672, 12673, 12674, R. S. 1919. (4) The legislative intent and purpose appear from the language used in the statutes providing for the appointment of an official court reporter, his duties, and his compensation, including the provisions for the payment of actual traveling expenses, for making transcripts, and the fee redounding to the reimbursement of the county from the litigant. Statutes cited supra; Secs. 7054, 7058, R. S. 1919. (a) The legislative

intent as disclosed throughout the entire article is a complete plan for compensation for all official court reporters in all judicial districts of the State based upon the largest population of any county in the judicial circuit, and provides an apportionment thereof, as likewise a complete plan for reimbursement of the county, and a proportionate payment of the actual expense of such reporter in attending his official duties. Art. I, Chap. 115, R. S. 1919; Arts. I, II, III and IV, Chap. 113, R. S. 1909; Secs. 11231, 11233, 11237, 11239, 11244, 11246, 11250, 11254, R. S. 1909.

DAVID E. BLAIR, J.—This is an original proceeding in mandamus to compel respondent, as Judge of the Twenty-Second Judicial Circuit of Missouri, to certify to the treasurers of the counties composing said judicial circuit, certain vouchers in payment for relator's services as official court reporter.

Upon the filing of the petition for our writ, respondent entered his appearance, waived the issuance of our alternative writ, and filed his return to the petition as and for such alterative writ. Said return admits all the facts alleged in the petition, and denies only the legal conclusions of relator based upon such facts, and prays for judgment.

That mandamus is the appropriate remedy is not questioned. The sole question involved in the case is the amount of salary relator is entitled to receive. The pleadings show the several transactions giving rise to the filing of the petition. It is unnecessary to go into details. Relator contends he is entitled to an annual salary of three thousand dollars, and respondent contends that relator is entitled to a salary of two thousand dollars.

The salaries of court reporters are fixed by Section 12670, Revised Statutes 1919, which reads as follows:

"Each court reporter shall receive salary as follows: In cities, or counties which now have and such as may hereafter have a population of sixty thousand or more, an annual salary of three thousand dollars, payable in equal monthly installments out of the city or county

treasury, on the certificate of the judge of the court in whose division such court reporter is employed. In counties having a population of forty-five thousand and less than. sixty thousand inhabitants, an annual salary of two thousand five hundred dollars, payable in equal monthly installments out of the county treasury, on the certificate of the judge in whose court he is employed. In counties having a population of less than forty-five thousand inhabitants, an annual salary of two thousand dollars, payable in equal monthly installments out of the county treasury on the certificate of the judge in whose court he is employed. *Provided, however,* that the court reporter appointed in any criminal court or court of common pleas within counties having forty-five thousand inhabitants or less shall receive as his compensation not more than five dollars per day for each and every day of attendance officially, said amount to be paid by the treasurer of the county upon presentation of a certificate from the judge of said court, which certificate shall be a proper voucher for the amount so paid: *Provided, further,* that where a judicial circuit is composed of more than one county, such salary shall be divided among the counties and be paid by them proportional as the population of such counties bear to the entire population of the circuit; *And, provided, further,* where there is more than one court reporter appointed in any circuit, he shall receive for his services the proportionate part only which said county in which he is appointed pays in proportion as its population bears to the entire population of the circuit.''

The question is thus narrowed down to this: Is the amount of such salary in the Twenty-Second Judicial Circuit governed by the population of said judicial circuit, or is it governed by the population of the most populous county in such circuit? If it is governed by the population of the circuit, relator is admittedly entitled to an annual salary of three thousand dollars; if by the population of the most populous county, he is entitled to a salary of two thousand dollars. If the former, our per-

emptory writ should issue; if the latter, it should be denied.

It is the contention of relator that the language used in Section 12670 indicates a legislative intent to fix the salaries of court reporters on a county basis where the population of the county in the circuit is sixty thousand or more, or is forty-five thousand and less than sixty thousand, and to fix the salary on the judicial circuit basis where the population of the circuit is less than forty-five thousand. On the other hand, respondent contends that the county basis was intended to be applied in all circuits. Neither of such constructions authorizes any court reporter in the State to draw an annual salary of twenty-five hundred dollars, as provided in the second clause of said section. Nor could a salary of that amount be paid under the 1910 census, controlling at the time the law was enacted.

It is scarcely conceivable that the Legislature intended to make a classification which would be inapplicable to any judicial circuit in the State at the time such law was passed. At the time the law was passed there was no county in the State with a population between forty-five and sixty thousand, either composing a circuit by itself or with other counties. This situation was not changed by the 1920 census.

One of the aids to construction of statutes is resort to the conditions or evils which the legislation was designed to meet. In 1919 the General Assembly repealed Articles I, II, III and IV of Chapter 113 of the Revised Statutes of 1909, in relation to court stenographers, and enacted in lieu thereof a new chapter to be known as Chapter 113 relating to court reporters, their duties, salaries, etc. This act is found in Laws of 1919, beginning at page 713. Section 11233 thereof became Section 12670 of Article I, Chapter 115, in the Revision of 1919. The act evidences the legislative intent to make uniform the law in relation to the appointment, duties, salary, tenure, etc., of court reporters. The county (or the city of St. Louis) is the unit of a circuit court's territorial jurisdiction. Several

of such courts, for the sake of convenience and economy, have been grouped into a single judicial circuit. Provision is made for an individual to be elected as judge in the territory included in such circuit and to preside over the several circuit courts comprising such judicial circuit. Except as to orders which may be made by him in vacation as judge of the circuit of the particular county, the judge of the circuit, of which the particular county is a part, has no power to enter a judgment or make any order in the court of such county, when such court is not in session and he presiding therein.

There is a sound and logical basis for establishing judicial circuits upon a population basis, which ordinarily operates uniformly and fairly throughout the State. Where the population and business of any given county, such as Jackson, Buchanan, Greene, Jasper or St. Louis County, or the City of St. Louis, result in too.much work for one judge, divisions of the court have been created to care for the business. Theoretically, the business of any one of such divisions should keep the judge thereof as busy as the judge of a circuit comprising several counties. Such inequalities as may be found to exist are possibly the result of original misinformation on the part of the Legislature or due to changed conditions of business or relative shifting of population thereafter. It is a matter of common knowledge that the General Assembly has frequently.been called upon to create additional divisions of court in our great cities to care for rapidly growing population and business needs

There is not and could not be any sound reason for the creation and maintenance of a judicial circuit comprising several counties because it contains a county of any given population. Nor. is there sound reason for fixing the salary of a court reporter in such circuit upon any such basis. If respondent's contention be correct, the conditions in one of the circuits now containing several counties of less than forty-five thousand might be so changed by industrial or commercial development

therein that two or more of such counties would quickly grow almost to forty-five thousand population, with attending increase in court business and demands upon the time of the court reporter, yet the salary would remain two thousand dollars, although the population of the circuit then exceeded sixty thousand. A study of the Official Manual, wherein is found the population of the present circuits and of the counties therein, will show all sorts of inequalities under respondent's contention.

Let us look now at the situation which would exist under classification upon the basis of population of the circuit. We will find that in the third, fourth, fifth, sixth, seventh, eighth, twelfth, thirteenth, fourteenth, sixteenth, eighteenth, nineteenth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth and thirty-first circuits the salary of court reporters would be three thousand dollars. In the first, tenth, fifteenth, seventeenth, twentieth, thirty-second, thirty-fourth, thirty-fifth, thirty-sixth and thirty-eighth circuits the salary would be twenty-five hundred dollars, and in the second, ninth, eleventh, thirtieth, thirty-third and thirty-seventh circuits, such salary would be two thousand dollars. All classifications made by the statute on a circuit basis would be used. The population used in the above classification is taken from the Official Manual of Missouri for 1921 and 1922 and is based upon the 1920 census. The arrangement will be found slightly different under the 1910 census. On the population of the circuit basis, the theoretically busiest circuits would pay the largest salaries to the court reporters and the least busy would pay the least salaries.

Such is the natural and reasonable basis of classification and the one the Legislature would reasonably have been expected to have had in mind, unless it has expressed a contrary intention. If the Legislature clearly intended to adopt some other or less logical classification and has clearly expressed such intention in its enactment, it must control, however unreasonable and illogical such intention may appear to us. Our task then is to de-

termine from Section 12670 and the other sections in Laws of 1919, at page 713 and following pages what such intention actually was. Section 12670 gives evidence of having been hurriedly and unskillfully drawn. While periods are placed after the clauses fixing the salary of court reporters in counties of sixty thousand and more and in counties having forty-five and less than sixty thousand population, it is evident upon the most casual reading thereof that those clauses and the succeeding clause are not complete sentences. If either is intended as a complete sentence it is a sentence without a predicate. Clearly each is intended as a clause in the complete sentence which begins the section and reads. "Each court reporter shall receive salary as follows:" Respondent's contention concerning the effect of the use of such periods is of little force. It is said in 36 Cyc. 1117: "While punctuation, including quotation marks, brackets, etc., is subordinate to the text and can never control the plain meaning of a statute, it is nevertheless proper, in case of doubt, that punctuation, etc., should operate as an aid in the construction and interpretation of the statute." Clearly the use of a comma, or even a period, is not controlling upon the question of proper construction, where such use would result in an unreasonable or absurd construction. Cases may be found in our reports where entirely different words, and in fact words of exactly opposite meaning, have been held to have been intended in place of the word actually used, where the word used was clearly an error and would give an absurd or impossible meaning to the statute. When the General Assembly was considering and passed our present court reporters' statute, its members must have known there was not a single county in the State having a population of forty-five thousand and over, which did not constitute a separate judicial circuit of itself. It was very easy, therefore, to fall into the error of using the word "county" in drafting a bill affecting all the judicial circuits of the State.

In Section 12670 the proviso that "where a judicial circuit is composed of more than one county, such salary shall be divided among the counties and be paid by them proportional as the population of such counties bear to the entire population of the circuit," indicates the legislative understanding and intent that the salary itself should be fixed upon the population of the circuit, rather than upon the population of any county therein.

A consideration of the first four articles of Chapter 113, Revised Statutes 1909, which were repealed by Laws of 1919, page 713, will clearly show how much confusion arose. Prior to the Act of 1919, Article I of Chapter 113, Revised Statutes 1909, dealt with official stenographers in counties and cities having three hundred and fifty thousand or more inhabitants and fixed their salaries. Article II dealt with official stenographers in counties of more than one hundred and fifty thousand and less than three hundred and fifty thousand inhabitants, and provided for a *per diem* allowance, instead of a salary. Article III dealt with official stenographers in counties having more than forty-five thousand inhabitants and less than one hundred and fifty thousand inhabitants; and also provided for compensation on a *per diem* basis. When the law was repealed and re-enacted the maximum was lowered to sixty thousand. This was doubtless for the benefit of the counties then in that class. So far as the first three articles were concerned, the use of the word "counties" made no difference as the county was co-extensive with the circuit in each class provided for.

Article IV dealt with the appointment of official stenographers by the judge of the circuit or criminal court within counties having a population of forty-five thousand or less "to attend any term of such court or part thereof." The language used clearly indicates that the court is confined within the territorial limits of the county as distinguished from the circuit itself. Section 11254, Revised Statutes 1909, emphasized this and provided that when such stenographer is appointed for an entire circuit his salary is to be paid by the counties of

State ex rel. Geaslin v. Walker.

the circuit in proportion to their population and if more than one stenographer is appointed, his salary shall be the same proportion of the salary provided for a stenographer of the entire circuit as the population of his county bears to the population of the circuit.

The most casual reading of the first four articles of Chapter 113, Revised Statutes 1909, in connection with the Laws of 1919, page 713, will convince any one at all familiar with such matters that the person who prepared the 1919 Act was endeavoring to draft a short and comprehensive law to cover the entire matter covered in Chapter 113, Articles I to IV. It put all of the stenographers upon a salary. It substituted a salary for a *per diem* allowance, which was apparently one of the main purposes of the bill. It increased the salary of all the court reporters who had previously been upon a salary, and did not reduce the fees for transcripts. The salary provided for those previously drawing only a *per diem* allowance was presumably as desirable as such *per diem* allowance.

Those familiar with the introduction and passage of legislative acts will readily understand how it is possible for inconsistencies and incongruities to creep into a new enactment to re-place several former articles. Provisions may be left in which should be omitted, and provisions may be omitted which should have been included. That seems to be just what happened in this instance. The clear legislative intent was to substitute a salary where there had been a *per diem* allowance before and to increase the salaries where they had been authorized before. It had no intention of changing the basis upon which such salaries had previously been fixed. It simply took the population classification heading each of said articles and put them into one section, and when they are in one section they are out of harmony, where they were perfectly proper in the previous separate articles.

Fixing the salaries of court reporters on the basis of the population of the most populous county of the circuit leads to absurd and unreasonable results. A few illustrations of such absurdities will suffice. Greene

County has a population of 68,698 and comprises the Twenty-Third Judicial Circuit with two divisions, one of which is known as the criminal court. Two court reporters are paid a total salary of six thousand dollars per year and are not required to travel to attend court. The Fourteenth Judicial Circuit, composed of Cole, Maries, Miller, Morgan, Moniteau and Cooper counties, with a population of 94,602, would pay its stenographer a salary of two thousand dollars. He is required to be away from home at considerable expense while attending court in five of the counties, yet no provision is made for payment of his traveling and hotel expenses while so away from home, unless Section 12674 be construed so as to make the words "in counties having forty-five thousand inhabitants or less" modify the words "criminal court,' and not the word "circuit."

The Sixth Circuit, composed of Buchanan County, with three divisions and three court reporters, pays the three reporters in the circuit nine thousand dollars for serving 93,684 people, while the reporter of the fourteenth circuit would receive two thousand dollars for serving 94,602 people. Again, the court reporter of the thirty-seventh circuit, composed of Clark, Scotland and Schuyler counties, would receive the same salary as the court reporter of the fourteenth circuit receives for serving more than three times the number of people.

Our conclusion is that Section 12670, Revised Statutes 1919, is ambiguous and that an absurd and unreasonable construction must not be given to it. The language of Laws of 1919, page 713, taken as a whole, does not require such construction. It should Le construed in a reasonable and common-sense manner so as to give to each section a construction which will carry out the result the general Assembly evidently had in mind when the act itself and the previous legislation and the correct theory of the establishment of judicial circuits are taken into consideration.

Such considerations, in view of the ambiguity of the language used in said section, require the following con-

struction to be given to said Section 12670: In all ju-
dical circuits having a population of sixty thousand or
more, the salary of the official court reporter is three thou-
sand dollars per annum; in all judicial circuits having a
population of forty-five thousand and less than sixty thou-
sand, such salary is twenty-five hundred dollars per an-
num; in all judicial circuits having less than forty-five
thousand population, such salary is two thousand dollars
per annum. Where the judicial circuit comprises only one
county or one city, as St. Louis, such salary is payable out
of the county (or city) treasury in equal monthly install-
ments; where the judicial circuit is composed of two or
more counties, such salary is payable in equal monthly
installments out of the county treasuries of the respec-
tive counties and the amount thereof any particular coun-
ty must pay is such proportion as its population bears to
the population of the entire circuit. Such construction
makes of Section 12670 a simple, workable and common-
sense law. Any other construction makes it unreason-
able and absurd.

It follows that relator is clearly entitled to the relief
prayed for in his petition and that a peremptory writ of
mandamus to that end should issue. It is so ordered. All
concur except *Walker, J.,* who dissents in separate opin-
ion filed.

WALKER, J. (dissenting).—The issue here seek-
ing solution is the salaries allowed by law to be paid to
court reporters in circuits consisting of more than one
county. This is to be determined by a reference to Sec-
tion 12670, Revised Statutes 1919, if such determination
be found possible from the language employed therein
or from a reasonable interpretation of that language
within the rules of statutory construction. That the
primary purpose of the section was to fix the salaries of
reporters by classifying the counties according to popu-
lation and by designating the salary to be paid by coun-
ties in each of these classes is clearly indicated by the
terms of the statute. Nor can the conclusion be subjected

to reasonable question that in taking the counties as units it was intended by the Legislature that the salaries prescribed should be paid to reporters in counties which within themselves constitute judicial circuits. Otherwise construed, the fixing of the salaries according to the classification of the counties and requiring each county to pay the salary thus fixed would be meaningless. However, it does not appear that there is substantial ground for controversy as to the meaning of this portion of the statute, other than the manner in which its terms may affect the construction of a subsequent portion having reference to the salaries of reporters in circuits composed of more than one county. The only reference in the section to circuits of that character appears in the proviso, "that where a judicial circuit is composed of more than one county, such salary shall be divided among the counties and be paid by them proportional as the population of such counties bear to the entire population of the circuit." Barring the inaccuracies in grammar and construction of this proviso its meaning, so far as is expressed in its words, is not difficult of determination. Its purpose was to fix the relative obligations imposed upon the several counties of a circuit in the payment of the reporter's salary. Having found the arithmetical proportion the population of each county bears to the population of the circuit we find that an essential necessary to the fixing of the pecuniary amount of these proportions is absent which renders impossible the ascertaining of the salary to be allowed to reporters in circuits of this character. Silent on this subject as the statute of Memnon before sunrise, it lends no aid under any recognized rule of interpretation by which the essential fact may be ascertained. Only by assumption and remote implication can the section be construed so as to throw any light upon this subject. To reach any conclusion, even by these adventitious aids, it is necessary in order to hold that salaries of reporters in circuits of more than one county may be fixed at $3000, that each circuit contains a population of 60,000 or more; and to imply that the word

county, as used in this highest classification, may be construed to mean circuit. It need scarcely be added that the course of reasoning necessary to reach this conclusion is sustained by no rule of construction.

Deliberately considered, therefore, Section 12670, so far as it attempts to fix the salaries of reporters in circuits of more than one county, is nothing more than a meaningless patchwork of words and furnishes no basis from which a conclusion as to the amount of such salaries may be determined. The plausible construction given to it by the majority opinion is to be commended for the deft manner in which it employs judicial legislation to reach the conclusion that reporters in such circuits as are here under review, are each entitled to salaries of $3000. Until, however, *jus dicere non dare* ceases to be the limit of judicial action, we cannot, in violation of what we deem to be the plain rules of statutory construction, lend our assent to that conclusion.

The alternative writ should, therefore, be quashed.