# OCTOBER, 1929.

IN THE MATTER OF J. MORRIS GRAVES, PETITIONER, v. A. W. WALKER, JUDGE, ETC., RESPONDENT.

Kansas City Court of Appeals. January 27, 1930.

*Don C. Carter* for relator.

*Franklin E. Reagan, J. W. Buffington, E. C. Lynch* and *J. A. Walden* for respondent.

BLAND, J.—This is an original proceeding in mandamus to compel respondent, as judge of the Ninth Judicial Circuit and as *ex officio* judge of the Sturgeon Court of Common Pleas, to certify to the County Treasurers of the counties of Randolph, Howard, Boone and Audrain, certain vouchers in payment of relator's salary as official court reporter of the Ninth Judicial Circuit and of the Sturgeon Court of Common Pleas, such vouchers to cover the difference in salary that said reporter has heretofore been paid, to-wit, $2000 per annum and a salary of $2500. Relator claims that he has been entitled to the latter sum since the passage of section 12670, Revised Statutes 1919.

Upon the filing of the petition for the writ respondent entered his appearance in this court, waived issuance of the alternative writ and filed his return to the petition as and for such alternative writ. To this relator filed a motion for judgment on the pleadings which in legal effect, admits the facts set forth in the return and raises only questions of law for our determination.

Section 12670, Revised Statutes 1919, provides that court reporters shall receive a salary of $2500 in counties (counties meaning circuits, see State ex rel. v. Walker, 302 Mo. 116) having a population of 45,000 and less than 60,000 inhabitants.''. The Ninth Judicial Circuit is composed of the counties of Howard and Randolph (section 2469, R. S. 1919) and has a population of less than 45,000. Therefore, under another provision of section 12670, Revised Statutes 1919, the court reporter of that circuit is entitled to a salary of only $2000, which salary relator has been receiving. The Sturgeon Court of Common Pleas is composed of parts of four counties, to-wit, Howard, Randolph, Boone and Audrain. [See Laws 1859-60, p. 17; Sec. 13763, R. S. 1919.] Section 7 of the act creating the Sturgeon Court of Common Pleas (now section 13769, R. S. 1919) provides that it shall be attached to the Second Judicial Circuit and that the judge of that circuit shall be *ex officio* judge of said Court of Common Pleas. [See Laws 1859-60, pp. 17, 18.] It is admitted in the pleadings that the Sturgeon Court of Common Pleas is not attached

to the Ninth Judicial Circuit and that the judge of that circuit is *ex officio* judge of the Common Pleas Court.

It is relator's contention that by reason of the fact that the statute uses the word "attached," and by reason of the fact that various statutes passed from time to time, fixing the time of holding court in the Ninth Judicial Circuit, have invariably included the time of holding court in the Sturgeon Court of Common Pleas and, further, by reason of the passage of the Act of 1879 (see Laws of 1879, pp. 86, 87), the Sturgeon Court of Common Pleas has become a part of the Ninth Judicial Circuit. In this connection relator states:

"Our position and contention, briefly, is that the Sturgeon Court of Common Pleas is a part of the Ninth Judicial Circuit, and that the population within the territorial limits of said Sturgeon Court of Common Pleas, within the counties of Boone and Audrain, should be included and added to the population of Howard and Randolph counties in determining the salary of relator under section 12670, Revised Statutes 1919, as construed by the Supreme Court in *State ex rel. Geaslin v. Walker, Judge,* 302 Mo. 116. In other words, we contend that the Ninth Judicial Circuit is composed of Howard and Randolph counties, and that the Sturgeon Court of Common Pleas is a part of such circuit, and that Howard county has a population of 13,997 inhabitants, Randolph a population of 27,633 inhabitants, and Boone county, within the territorial limits of Sturgeon Court of Common Pleas has a population of 5,264 inhabitants, and Audrain county, within the territorial limits of the Sturgeon Court of Common Pleas, has a population of 1,153 inhabitants, making a total of 48,047."

The question to be determined is whether the Ninth Judicial Circuit and the Court of Common Pleas are to be considered together for the purpose of fixing relator's salary.

An important question to be determined is as to what is meant by the word "attached" as used in the statute. The meaning of that word in general acceptation is rather an indefinite one. A thing may be so closely attached to another as to become amalgamated with it and an integral part of the same, or it may be so loosely attached as to hardly afford any connection between the two. An automobile or motor car is composed of a chassis and a body, the body being attached to the chassis and if the latter is removed what is left is no longer an automobile or motor car. A team of horses may be attached to a wagon but the two are different entities and when the horses are detached from the wagon neither entity is broken up. One thing may be attached to another for certain purposes but not for all purposes. In certain New England States a custom exists to attach the barn and outhouses to the residence but they are in no part used for residential purposes, the attachment being merely for convenience.

When the Legislature provided that the Sturgeon Court of Common Pleas should be attached to the Second Judicial Circuit it did not mean that the former should lose its entity as a court; for it not only provided for a separate court but a court with a separate organization, having its own clerk and marshal. It also has its own reporter in the person of relator, and its own time for holding court. While it does not have a separate judge, the Legislature did not provide that the judge thereof should be selected from a territory included within the boundaries of both the Ninth Judicial Circuit and the Common Pleas Court but that the judge who was selected solely by the voters of Howard and Randolph counties (the Ninth Circuit) should be *ex officio* judge of the Sturgeon Court of Common Pleas. In other words the Ninth Judicial Circuit and the Common Pleas Court are separate and distinct.

It is very easy to understand why the Legislature used the word "attached" in the statute creating the Sturgeon Court of Common Pleas. When the Common Pleas Court was formed Boone, Howard and Randolph counties were a part of the Second Judicial Circuit and Audrain county was a part of the sixteenth. [Sections 3 and 17, chap. 48, pp. 545, 546, R. S. 1854-5.] At that time the Hannibal Court of Common Pleas was a part of the Sixteenth Circuit by virtue of section 17 aforesaid, and it was provided in said section that the judge of the Sixteenth Circuit should be judge of the Hannibal Court of Common Pleas. The Legislature no doubt thought that it would be an undue burden upon the judge of the Sixteenth Circuit, of which Audrain county formed a part, to require him to preside over the Sturgeon Court of Common Pleas, which a portion of Audrain county also forms a part, so it decided to attach the new court to the second circuit, wherein most of its territory lay, instead of the Sixteen Circuit. This was done for the purpose of designating the judge of the Second Judicial Circuit as judge of the Common Court, and so that all of the courts over which he should preside should be so held as not to require the judge to be holding court in more than one place at the same time, as the judge of these courts was to be the same person. For all of these reasons the Legislature, in order to show the relationship which necessarily must be present between these courts, provided that the Common Pleas Court should be attached to the Second Judicial Circuit. This identity was further developed by the Legislature in the passage of the various acts concerning the times of holding court within the Ninth Judicial Circuit, in which it also covered the time of holding court in the Sturgeon Court of Common Pleas.

We would not be authorized to give any further meaning to the word "attached," as used in the statutes, merely in order to provide for an increase in the salary for relator. In order to so construe that word it would be necessary to hold that the court of Common

Pleas is not only attached to the Ninth Judicial Circuit for the purposes we have indicated, but that it has been positively amalgamated with that court in an essential way and so as to lose its identity in so far as that an appointment of a reporter for the Ninth Judicial Circuit would necessarily include the appointment of a reporter for the Common Pleas Court although no separate appointment be made as to the latter court. Relator has accepted the appointment to two separate positions as court reporter, one as reporter for Ninth Judicial Circuit and one as reporter for the Sturgeon Court of Common Pleas. It is quite apparent that the Common Pleas Court is only loosely attached to the Ninth Judicial Circuit, and only for the purposes which we have mentioned, the Common Pleas Court being complementary to the circuit court.

Relator tries to take some comfort from the fact that the Legislature in 1879, passed the following act:

"All courts of common pleas existing and organized in cities and towns in this State, having a population exceeding three thousand five hundred inhabitants, shall be presided over by the judges of the circuit courts in which such courts are situated, and shall constitute a part of such circuits, and the labors of presiding over such courts shall constitute a part of the duties of such judges: *Provided,* the jurisdiction of said Common Pleas Court shall remain as now provided by law. But no compensation additional to the salaries allowed by law to circuit judges shall be allowed to such judge for presiding over such courts.

"This act shall take effect and be in force from and after the expiration of the terms of office of the judges who now preside, by virtue of law, over such courts." [Laws 1879, pp. 86, 87.] [See, also, section 2439, R. S. 1919.]

The parties hereto do not agree as to the purpose of the Legislature in passing this act. Prior to the adoption of the Constitution in 1875, there were numerous Courts of Common Pleas in this State, but that Constitution abolished all of these courts, except as to two classes into which it divided them; one as to such courts existing and organized in cities and towns having a population in excess of 3500 inhabitants and the other which by the laws of their creation were presided over by a judge of the circuit court. [Constitution 1875, secs. 1, 42, art. VI, sec. 5, art. XV; Ex parte Snyder, 64 Mo. 58, 60.] The adoption of the Constitution had the effect of abolishing all Common Pleas courts, except Cape Girardeau, Louisiana, Hannibal and Sturgeon Court of Common Pleas. The Cape Girardeau and Hannibal Courts of Common Pleas were existing and organized in cities, each of which had a population in excess of 3500 and the other two Common Pleas Courts were in cities of less population. However, each of the four Common Pleas Courts was presided over by a circuit judge except the Cape Girardeau court. [See Laws 1851,

pp. 201, 202; R. S. 1854-5, p. 546; Laws 1857, pp. 23, 24; Laws 1859-60, pp. 17, 18; Laws 1868, p. 257.]

As before stated, the parties hereto differ as to the reason of the passage of the Law of 1879 above quoted. Relator's contention is that it was the purpose of the Legislature to make each of the Courts of Common Pleas a part of the Judicial Circuit in which it was situated and the Sturgeon Court of Common Pleas a part of the Ninth Judicial Circuit; that while the Legislature mentioned only such courts that were in cities having 3500 inhabitants, it overlooked the Sturgeon and Louisiana courts which were in cities of less than that population; that if it had not overlooked these courts it would have provided that all Common Pleas Courts should be parts of Judicial Circuits. Therefore, relator not only has the Sturgeon Court of Common Pleas attached to the Ninth Judicial Circuit but has it become a part and parcel of such circuit. On the other hand respondent states that the Legislature, by the passage of the Act of 1879, showed an intention to make a distinction between those Common Pleas Courts that were made parts of Judicial Circuits and the Sturgeon Court of Common Pleas which was merely "attached" to a Judicial Circuit.

However, it is quite apparent that the theory of both parties is erroneous. From what we have said it appears that when the Act of 1879 was passed there was but one Court of Common Pleas, the Cape Girardeau court, existing in a city of 3500 inhabitants which was presided over by its own judge and not a circuit judge. [See Laws 1851, pp. 201, 202.] It is apparent that the passage of the Act of 1879 was for the purpose of abolishing the office of this judge at the expiration of his term and to cause the circuit judge of the circuit in which the Cape Girardeau court was held to preside over the Common Pleas Court. Later in 1883 (see Laws 1883, pp. 71, 72), the position of judge of the Cape Girardeau Court of Common Pleas was recreated and that court is now presided over by its own judge being the only one of the four Common Pleas Courts who has its own judge separate and distinct from circuit judge.

The Legislature when stating that certain Common Pleas Courts "shall constitute a part of such circuits" (meaning the circuits in which such Common Pleas Courts were located) and in using the word "attached" in creating the Sturgeon Court of Common Pleas, attempted to accomplish an identical purpose, that is, to so correlate the Common Pleas Court with the circuit from which the Common Pleas Court secured its judge, that all of the courts involved could work in harmony in reference to the time of holding court so that the terms in one court would not overlap those in the other. There is nothing in these acts indicating that the Legislature had in mind any nice distinction between the words "constitute a part of" and

the word "attached." Like the word "attached" the words "part of" may mean different things, depending upon in what connection they are used. Kansas City is a part of Jackson county but for most purposes the two corporations are entirely distinct.

If relator is correct in his contention that the Sturgeon Court of Common Pleas is attached to the Ninth Judicial Circuit in the sense of being an integral part of that circuit, then instead of cutting in two the territory of the Court of Common Pleas, which relator is forced to do but which no statute contemplates, and adding, as he does, in order not to count twice the inhabitants of Howard and Randolph counties which are within the boundaries of the Common Pleas Court, a part of the population within the territorial limits of that court, to-wit, that in the counties of Boone and Audrain, to the Ninth Judicial Circuit, the whole population within the territorial limits of the Common Pleas Courts should be added. In order to hold that the Sturgeon Court of Common Pleas is an integral part of the Ninth Judicial Circuit it would be necessary to say that it is a part of that circuit for all purposes and not merely for the purpose of increasing the salary of relator. In other words we would be required to hold that the Ninth Judicial Circuit includes a part of the Thirty-fourth and the Eleventh Circuits, although the judge of the Ninth Judicial Circuit as such possesses no jurisdiction in the part of the Ninth Judicial Circuit, outside of Randolph and Howard counties. Should we decide in relator's favor we would have to hold, in effect, that parts of Judicial Circuits exist in this State over which the judges of those circuits have no jurisdiction but over which a judge of another circuit has jurisdiction.

We think that there is no question but what relator is not entitled to the writ. For, in addition to what we have said on the subject, it appears that the Legislature has specifically provided a salary for relator's services as reporter of the Sturgeon Court of Common Pleas. The Supreme Court in the case of State ex rel. v. Walker, supra, pointed out that section 12670, Revised Statutes 1919, evidences a legislative intention to draft a law comprehending all court reporters in this State, and should it appear that there is no provision made for relator's salary as reporter of the Sturgeon Court of Common Pleas, then his contention in reference to being entitled to a salary greater than that paid him as reporter for the Ninth Judicial Circuit, that, is, that he is entitled to a total salary of $2500, or, in effect, $500 additional for acting as reporter for the Sturgeon Court of Common Pleas, would be entitled to more weight than it would otherwise. However, it is apparent to our minds that the first proviso of the statute covers the situation. Said proviso reads as follows:

"*Provided,* however, that the court reporter appointed in any criminal court or Court of Common Pleas within counties having forty-five thousand inhabitants or less shall receive as his compensation not more than five dollars per day for each and every day of attendance officially, said amount to be paid by the treasurer of the county upon presentation of a certificate from the judge of said court."

The Supreme Court in the Geaslin case, held in reference to salaries of reporters in circuit courts, that the word "counties" means circuits, or in other words, judicial territories. It was evidently intended by the Legislature that the proviso above quoted should cover court reporters in all Courts of Common Pleas for the reason that there is no other part of the statute covering such courts. As before stated, the Supreme Court has held that the statute was intended to cover all court reporters in this State. While the Courts of Common Pleas as Hannibal, Louisiana and Cape Girardeau are within single counties exclusively, and none of these counties have in excess of 45,000 inhabitants, and we could give the word "counties" in the proviso its usual meaning and have it apply to those counties, it would not apply to the Sturgeon Court of Common Pleas because that court is not within a single county. So following out the reasoning of the Supreme Court in the Geaslin case the word "counties" in the proviso was evidently meant, and should be construed to mean "territorial boundaries" of Common Pleas Courts. This makes the proviso apply to all Common Pleas Courts as the territory comprised within the jurisdiction of the Sturgeon Court of Common Pleas has a population of less than 45,000 inhabitants. Relator, therefore, is entitled to a salary of not more than five dollars per day for each and every day of his official attendance upon this court. It appears that he has been receiving this salary in the past. Of course, the fact that the Legislature in 1927, fixed the salary of the reporter of the Cape Girardeau Court at $1200 (see Laws of 1927, p. 468), has no bearing on this controversy.

From what we have said the alternative writ should be quashed and it is so ordered. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.