CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION.

In Banc, December 22, 1915.

1. PUBLIC SERVICE COMMISSION: Findings As to Necessity of Interchange Railroad Track. The finding of the Public Service Commission that the evidence discloses such a pressing public demand or necessity for the construction of an interchange track by two railroads at the point where their lines cross each other as to warrant the expenditure of the amount of money which the evidence shows the track will cost, are not final and conclusive upon the courts authorized to review its actions.

2. ———: Limitations Upon Powers. The origin and powers of the Public Service Commission are purely statutory, and it has no authority save that given it by express statute, and save such implied authority as may be necessary to carry into effect the authority expressly given.

3. ———: Evidence and Procedure. The evidence in any case appealed from the Public Service Commission is required to be preserved and transferred to the circuit court, and that court

Railroad v. Public Service Commission.

determines the case on that evidence; and on appeal from the circuit court, the full substance, if not the entire evidence, must be brought to the Supreme Court, and this court determines the propriety of the judgment of the circuit court upon that evidence, as in an equity proceeding, by a trial *de novo*, and will direct the circuit court to affirm or reverse the judgment of the commission, but not to modify it, nor will it.direct the dismissal of the proceedings, since its jurisdiction is derivative.

4. ————: **Interchange Railroad Track: Unreasonable Burden.** A connecting or interchange track between two railroads whose lines cross each other (one thirty-five feet above the other's track) is not a facility included within the absolute duties of a railway company; and where the evidence clearly shows that the cost of constructing such interchange track will be very large and the cost of maintaining it will far exceed all probable income to the railroad companies from operating it, and there is no demonstrated public necessity for its construction, as shown by the evidence and the small amount of previous shipments, the judgment of the circuit court affirming the judgment of the Public Service Commission ordering it to be constructed, will be reversed.

5. ————: ————: ————: **Costs.** The question of the expense of constructing and maintaining such a track is of great importance in determining whether the judgment of the commission imposes an unjust burden upon the railroad companies.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED AND REMANDED (*with directions*).

*O. M. Spencer, H. J. Nelson* and *M. G. Roberts* for appellant.

Under the evidence in this case as to the places and persons interested, the volume of business to be affected, the amount of public demand and necessity as against the conceded tremendous cost of erecting and maintaining this interchange track, the order of the Public Service Commission was arbitrary, unreasonable, unsupported by any substantial evidence showing a public demand and necessity and was such as to deprive the appellant of its property without due process of law in violation of the Constitutions

of Missouri and the United States. State of Washington ex rel. v. Fairchild, 224 U. S. 510. The proposed interchange track is not a facility included within the absolute duties of a carrier and the question of expense is of controlling importance. State ex rel. v. Fairchild, 224 U. S. 529.

*Wm. G. Busby* and *George N. Davis* for respondents.

The commission's findings are in effect conclusive, and the scope of review thereof by the courts is limited under the provisions of the Public Service Commission Act. It is universally held that in reviewing the orders of the Interstate Commerce Commission, in interstate cases, and of the State Commissions, in State cases, the courts treat the orders of the commission as in effect conclusive, and the same rule should be laid down by this court for Missouri. State v. Public Service Commission, 137 Pac. 136; Electric Ry. v. Commission, 117 Pac. 748; State ex rel. v. Public Service Commission, 142 Pac. 684; Railroad v. Railroad Commission, 140 N. W. 298; Railroad Commissioners v. Railroad, 80 Pac. 53; 33 Cyc. 52; Morgan Co. v. Railroad Comm., 33 So. 220; In re Citizens of Brook Park, 144 N. W. 771; State ex rel. v. Railroad, 144 N. W. 156; Reagan v. Loan & Trust Co., 154 U. S. 362.

WOODSON, C. J.—This suit regards the legality of certain proceedings to be presently mentioned, had to compel the appellants, the Chicago, Burlington & Quincy Railroad Company and the Wabash Railroad Company, to construct and maintain an interchange track or switch between their respective main lines of roads at Macon, Missouri.

Briefly stated, the facts of the case are: The Hon. C. H. Payson, the mayor of the city of Macon,

on November 18, 1913, under the Public Service Commission Act, filed a petition with the respondent, the Public Service Commission, to require the Burlington and the Wabash Railroad companies to construct and maintain an interchange track between their main lines at Macon, for the purpose of transferring cars from one road to the other.

The cause was set down for hearing and all parties were duly notified of the time and place of hearing. After the issues had been joined the parties appeared, introduced their evidence and after due consideration the commission granted the petition, and made an order upon the railroad companies to construct and maintain said track.

As I understand the record, the Burlington Company, alone, by writ of *certiorari*, had the cause transferred to the circuit court of Cole County for review. The cause was there heard by the court, as provided for by said act; and after due consideration the order of the commission ordering the construction and maintenance of the track was affirmed.

In due time and in proper form the Burlington Company, alone, appealed the cause to this court.

Formal parts omitted, the petition filed by the complainant was as follows:

"That the line of railroad of the Wabash Railroad Company crosses the line of railroad of the Chicago, Burlington & Quincy Railroad Company at Macon, Missouri; that there is no switch connection or interchange track at or near the point of intersection of the line of the Wabash Railroad Company with the line of the Chicago, Burlington & Quincy Railroad Company at Macon, Missouri; that the reasonable service of the public and in order that the freight might be handled for the proper accommodation of shippers on said railroads and the citizens of Macon, it is necessary that switch connection or an interchange track between said lines of railroad be constructed and

maintained by such railroad corporations at Macon, Missouri, to the end that property may be carried without a change of cars, and that property may be carried by a more direct and shorter route; that such interchange track or switch connection is reasonably necessary for the accommodation of the public of the city of Macon. Wherefore, complainant prays that the commission order and require that the defendants construct and maintain a switch connection or interchange track between their said lines of railroad at Macon, Missouri, and require the defendants to receive from each other and to transport for each other, cars over each other's tracks by way of such switch connection or interchange track, and for such other and further relief as to the commission may seem just and proper.''

The answer of the Chicago, Burlington & Quincy Railroad Company, omitting formal parts, is as follows:

''Further answering and as a further defense, this defendant says that at the point where the track of said Wabash Railroad Company crosses that of this defendant, the said track of said Wabash Railroad Company is thirty-two feet above the track of this company; that the construction of a connecting track is impracticable and wholly unnecessary; that the expenses of constructing any such track would be enormous and such a track as would be a dangerous thing, and that the traffic which could possibly be interchanged between the two companies at that point would be wholly insignificant in volume; that the demand of the complainant is wholly unreasonable and not made in good faith, but for the purpose of attempting to coerce this defendant into doing other things that the said city of Macon is demanding of it; that the public service does not demand the construction or maintenance of any such connecting track as is demanded by plaintiff, and that any such connecting

266Mo.22

track would be wholly useless and of no substantial benefit to anyone whomsoever.

"Further answering and as a further defense, this defendant says there is no valid law purporting to require this defendant to so construct or join in the construction of such a connecting link as is demanded by complainant, and that if there be any law purporting to require or purporting to authorize this Honorable Commission to require this defendant to so construct or join in the construction of such connecting track, then the said law is unconstitutional and void under the provisions of the Constitutions of the United States and the State of Missouri, in that the same would deprive this defendant of equal protection under the law and deprive it of its property without due process of law, and void for the further reason that it would require this defendant to do various things which it has no lawful right or power to do, such as the acquirement of property of other persons, the occupancy of public streets and the interference of access with abutting owners upon public streets, the power to do which this commission cannot confer upon this defendant. Wherefore, having fully answered, defendant asks to be discharged with its costs."

The commission in its findings stated the character and cost of the improvement in this language:

"Speaking roughly, the proposed track would connect with the Burlington about 1050 feet east of the crossing, and with the Wabash about the same distance south of the crossing, the length of the track from one road to the other being about 1500 feet. An additional length of from 400 to 600 feet paralleling the Wabash was recommended in order to secure a safe place for the storage of cars awaiting transfer. The difference in elevation between the points of connection with the two lines is about thirty-five feet and the track would have a 2.5 per cent grade, with a 6 degree curve. In

order to come to the lower grade of the Burlington, a deep cut and the removal of about 16,000 cubic yards of earth is made necessary, and that is the large item of expense, as shown by all of the estimates and testimony. The total cost of the improvement as estimated by the Burlington engineer is the sum of $15,708, and of the engineers of the Public Service Commission the sum of $13,028. The city engineer, without having considered the matter in detail, gave an off-hand estimate of from $4000 to $6000. The engineer of the Burlington added $12,250 as damages to the Wabash Company for the land used for right of way purposes. Mr. Sparrow testified that, in his opinion, by using the route of the former connecting switch, the cost could be reduced $6000, from his estimate, but that on account of the heavier grade and shorter curve an engine could not haul more than 140 tons, or two carloads of coal, and that such construction would not be advisable if the interchange traffic would exceed two cars per day. The annual cost of maintenance was estimated at about $500. The cost of the improvement can be more definitely ascertained, and in this case there is little difference in the estimates of the engineers who carefully considered the subject. From their testimony we find that the sum of $13,000 should cover the reasonable cost of the track, and $500 per year a liberal allowance for keeping it in repair. We have made no allowance for the value of the land necessary for the right of way, for the reason that it is owned by the companies and is useful only for railroad purposes, although we think the quantity contributed by each company would be a proper matter for consideration in apportioning the cost of the work.''

The abstracts of the records, as might naturally be expected, from the statement made of the case, are voluminous, covering almost four hundred printed pages, and for that reason alone it would be out of the question to state even the substance of the evidence.

All we can hope to do is to state the ultimate facts which the evidence tended to establish.

I.   The principal question presented by this record for respondents is, does the evidence preserved disclose such a pressing public demand or necessity for the construction of the interchange track mentioned as to warrant the expenditure of the large sum of money the evidence shows would be required to accomplish that purpose?

Public Demand and Cost.

At the very threshold of the case we are met with the contention of counsel for respondents to the effect that the findings of the commission, under the act of its creation, are final and conclusive upon this and other courts of the State, which might be called upon to review its actions.

We are not able to lend our concurrence to that contention. The origin and powers of the commission are purely statutory, and it has no authority save that which is given to it by the express provisions of the act, and such implied authority as may be necessary for it to exercise in order to carry into effect that which is expressly given.

And upon the other hand, the scope, force, effect and the limitations of the acts and rulings of the commission must be sought for in the same act of the Legislature.

The act of the Legislature provides that the commission shall preserve all of the maps, plats, letters, documents and other evidence introduced at the trial of a cause; and that upon the transfer of the cause to the circuit court for review, it shall transmit the same, with the record of the case to said court.

And section 111 of the act in express terms provides that when the cause reaches the circuit court it shall hear it "on the evidence and exhibits introduced before the commission," at the trial of the cause be-

fore it, and that the "same shall be tried and determined," by the circuit court, "as suits in equity;" and section 114 of the act relating to appeals to this court provides that "the original transcript of the record and testimony and exhibits, certified to by the commission and filed in the circuit court in any action to review an order or decision of the commission, together with a transcript of the proceedings in the circuit court, shall constitute the record on appeal to the Supreme Court."

This language is plain and unambiguous, and there is no room left for misunderstanding its meaning.

Every court and jurist of the State thoroughly understands how a cause in chancery is tried and determined. If not the entire, the full substance of the entire evidence must be brought to this court; and while we will defer somewhat to the findings of fact made by the trial court, yet we are not arbitrarily bound thereby.

The trial in this court is practically *de novo*, and after due consideration given to all the evidence the court will accept, modify or reject the findings of the circuit court and make such findings as the law and evidence may warrant. [Gibbs v. Haughowout, 207 Mo. 384, l. c. 391.]

The same is true of the findings of the commission in this class of cases.

This court, under the plain mandate of the statute quoted will consider the entire record, and give to the findings of the commission such weight and consideration as we may deem them entitled to under the law and evidence.

We are, therefore, clearly of the opinion that this contention of counsel for the respondent is not well founded, and the same is ruled against them.

II.    This brings us to the consideration of the original proposition previously stated.

In order to have the proposition clearly before our minds, I will restate it in the language of counsel for appellant:

"Under the evidence in this case as to the places and persons interested, the volume of business to be affected, the amount of public demand and necessity as against the conceded tremendous cost of erecting and maintaining this interchange track, the order of the Public Service Commission was arbitrary, unreasonable, unsupported by any substantial evidence showing a public demand and necessity, and was such as to deprive the appellant of its property without due process of law in violation of the Constitutions of Missouri and the United States."

We have made a careful examination of the record in this case and are firmly of the opinion that the evidence preserved therein does not warrant the order made by the Public Service Commission, or the judgment of the circuit court rendered affirming the order of the commission.

Counsel for the respondents concede that the cost of the construction of a connection or passage track will be at least $13,000, while the evidence for appellant tended to show that it would cost $15,700, both excluding the damages and cost of the right of way for the passage track, which appellant's evidence tended to show would amount to about $12,000, while respondents introduced no evidence upon that point. In addition it is practically agreed that the annual cost and expense for maintaining and operating said track will be at least $500.

The evidence also shows that the Wabash road is thirty-five feet above the Burlington, and that the grade of the track would be about two and a half per cent with a six per cent curve, which would prevent the transfer of more than two cars of freight at a

time, or one hundred and forty tons. It has been suggested that this grade and curve referred to another track, but be that as it may the result would be the same, as it is conceded the annual cost of maintenance and operation would be $500.

There are no industries whatever on the Wabash road, and but one on the Burlington, and that is the Home Coal Company.

In the year 1913, this company shipped fifty-eight cars of coal out of Macon and only thirteen of them were shipped to competitive points between the two roads.

For the year ending November, 1913, the Burlington road delivered to the Wabash 134 tons of freight in broken lots, and the latter delivered to the former 150 tons.

This is an accurate summary of the evidence showing the amount of business interchanged between the two roads at Macon during that year.

The evidence also shows, that at Chillicothe, a city larger than Macon, and located just west in the second county, where the two roads cross and have interchanging tracks, not a single car of freight was interchanged between the two roads.

The record also discloses that R. A. Guthrie owns a creamery company and ice plant, manufactures butter and ice, etc., amounting to about fifteen or sixteen tons a day during the hot weather. This plant has no connection with either of said roads, and therefore an interchanging track would not serve it in any manner. During the year 1913, the year before this proceeding was begun, it shipped over the Wabash road six or seven cars of ice, only two or three of which were in carload lots.

There was other evidence tending to show that the business of Macon was rapidly increasing and several witnesses testified as to what amount of freight would

be interchanged should the connecting switch be put in. In substance it was as follows:

Fifteen to twenty cars of ice; fifteen to twenty cars of poultry; "a large proportion of the one hundred cars of northern potatoes;" several cars of mules; from three to five hundred cars of coal; from fifty to seventy-five cars of hay.

This latter evidence is largely expert or rather speculative, with no well established facts upon which to base the opinions of the various witnesses who testified thereto. The actual shipments to and from Macon and Chillicothe are not one quarter of the amounts estimated by these speculative witnesses. But for the sake of argument, suppose that the respondents' estimate of the number of cars of freight to be shipped to and from Macon should amount to 500 or even 750, the highest estimate made by anyone, still the question would remain, what percentage of that number would be interchanged at that point between these two roads?

There is no evidence tending to show that fact; but suppose it should be ten times more than it was when this proceeding was instituted, still we would have scarcely two hundred cars; and should the roads charge the legal fee, which I believe is $2 per car for switching charges, they would collect only $400 per annum, $100 less than respondents' concede would be required to keep up and operate the interchanging track. This loss should be added to the interest on the cost of construction, $13,000, and on the value of the right of way, $12,000, total, $25,000, which at six per cent interest would be $1500, plus the $100 before mentioned, making a total of $1600.

But suppose again: That the entire 750 cars should be transferred over the interchanging track, and the switching charges should be $2 per car, we would then have a gross annual earning of $1500, and the actual cost to the company would be the $1500 interest, plus the $500, actual expense of maintenance

and operation, and an aggregate cost of $2000. From this should be deducted the $1500 switching charges which would leave a net loss of $500 per annum to the appellant.

As previously stated, this evidence wholly fails to satisfy the chancellor that. this showing of inter-changeable freight would warrant this court in compelling the Burlington Company to lay out and expend the large sums of money the record shows would be required to construct and operate this switch.

Moreover, suppose no interest is allowed upon the value of the right of way, damages, etc., as counsel for respondents contend should not, then how would the matter stand? Six per cent interest on the cost of construction, $13,000, is $780, to which should be added the $500 annual cost for maintaining and operating the switch, which would amount to $1280, which sum, if deducted from the highest estimate of the switching charges that would be collected, $1500, we would have a net balance in favor of the company of $220 per annum.

This result is reached by figuring everything most favorably to the respondents. Even to the highest estimates made by their witnesses; but if we weigh their evidence in the light of the actual facts in the case, we have no hesitancy in saying that there is no substantial evidence in this record which would warrant the chancellor in finding that one-half of the cars estimated by the witnesses for respondents would be transferred over this track, should it be constructed; and instead of there being a profit of $220 per annum to the company there would be more than that amount of actual loss to it.

Under these facts and circumstances this unjust burden should not be placed upon the appellant.

It must be apparent that the proposed connecting track is not a facility included within the absolute duties of a railway company.

It was held by the Supreme Court of the United States in the case of State of Washington ex rel. Oregon Railroad & Navigation Company v. Fairchild et al., State Railroad Commissioners, 224 U. S. 510, that the question of expenses of constructing and maintaining such a track is of vital, if not of controlling importance.

I am therefore clearly of the opinion that the judgment of the circuit court should be reversed and the cause remanded with directions to dismiss the proceedings.

All concur, *Bond, J.,* and *Blair, J.,* in paragraph one and the result; *Revelle, J.,* not sitting.

## ON MOTION FOR REHEARING.

PER CURIAM.—It is urged that we were in error in holding that we would not be bound by the findings of fact made by the commission in this case. The original opinion holds these cases must be heard as cases in equity. From that opinion we do not desire to depart. The act says that they shall be so heard. That means that we will consider the evidence *de novo.* In equitable procedure this court is not bound by the findings of fact made by the chancellor *nisi.* We may yield to the judgment of the commission on the facts (if the circumstances of the cause so appeal to us) as we may yield to the judgment of the chancellor *nisi* in equity, upon the facts, but not otherwise. There is no substance therefore in this ground of the motion for rehearing.

It is urged further, however, that we erred in directing a dismissal of the proceeding, and in this we think there was error, but not such as to justify a rehearing. Under the act our jurisdiction is derivative. Under the act the circuit court has no power to go further by its judgment than to affirm or reverse the judgment of the commission. We should not have

given any direction to the commission as to dismissing the petition. That is a matter left by the law to them. Let the opinion be thus modified, and the motion for rehearing overruled.

All concur except *Woodson, C. J.;* who is of opinion that the judgment first directed is a correct one. Let the motion be overruled, and the judgment entered here that the judgment of the circuit court be reversed and the cause remanded with directions to enter a judgment reversing the order of the commission.