The plaintiff is an incorporated interurban railway company connecting Carthage, Joplin, Webb City and other towns in Missouri, and extending into Kansas. The construction of this street railway in the City of Carthage was under and ordinance permitting the assignor of the company the user of a large number of local streets, and requiring in consideration thereof interurban connections by electric rapid transit, with certain other towns named in the ordinance. These interurban connections were duly constructed and are now fully maintained by plaintiff, which, also, as incidental thereto, ran spur tracks through the streets of Carthage connecting its interurban system with two railroad stations in that city. Over these spur tracks transfers were issued by the rapid transit lines. The plaintiff asked the Public Service Commission to discontinue these *Page 58 
spur tracks, which it alleges were not essential to the maintenance of its interurban lines and which were sparsely used, ran over a very short distance and could not be operated without a loss of $2500 a year or $50,000 in 20 years. The Commission took the view that it was without the power to grant the relief sought, however "meritorious the case presented by the company might be" and dismissed the complaint. Proper steps were taken to obtain a review of the findings and orders of the Commission, which were sustained by the Circuit Court of Cole County, from which judgment the railway company duly appealed.
I. Unless the issue in this case is distinguishable in principle from the one presented in City of St. Louis v. Public Service Commission, 207 S.W. 799, this appeal is dominated by that ruling and the judgment of the circuit court will have to be reversed and the order of the Commission setDiscontinuance aside. The learned counsel for the Commissionof Spur Track. concede the rectitude of that ruling and the cases sustaining it in this jurisdiction, but insist that said ruling related to the question of the power of the Commission to raise the rates of water, telephone and street railway companies "above those fixed by contract" with a municipality, and that they do not relate to cases like the present which involves the rights of a utility (in this instance a street railway) to discontinue the operation of any of its tracks constructed under a permissive ordinance, for the reason that it could be carried on only at a great loss.
The franchise of a street railway company is derivable solely from the Legislature. Its right to exercise that franchise over the streets and alleys of a particular municipality, is subject to the regulatory control of such city, which may evidence that control by an ordinance consenting to the use of its streets and alleys and designating those over which the street railway may operate its State-derived corporate powers. [Sec. 20, Art. 12, Constitution *Page 59 
1875.] It was ruled that the City of St. Louis, in the exercise of such a regulatory control over its streets, could not make an inviolable contract with a street railway for a fixed rate of fare; that to do so would impinge upon the reserve power of the Legislature to exercise plenary control of any matter falling within the domain of the police power, as rate-making does. It was further held that Section 20 of Article 12 was not designed nor intended to abridge the full power of the Legislature over the class of subjects embraced within the inalienable police power of the State. [Const. Art. 12, sec. 5; Tranberger v. Railroad, 250 Mo. 46, affirmed 238 U.S. 67.] It was also held that Section 20 of Article 12 of the Constitution, to-wit: "No law shall be passed by the General Assembly granting the right to construct and operate a street railroad within any city, town, village, or on any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad; and the franchises so granted shall not be transferred without similar assent first obtained," did not, in terms, nor by necessary intendment, devolve upon the municipalities therein mentioned any part of the unrestricted power of the Legislature to deal with all matters pertaining to the police power of the State where not constitutionally prohibited from so doing.
In the exercise of this great lawmaking function, the State is not obstructed by a contract between one of its agencies (cities, towns or villages) and other persons, for the reason that the State cannot alienate any of its sovereign powers which arenecessary to the public welfare, or essential to the protection of the health, morals and property of its citizens. As an obvious corollary of this principle, no municipality, either by ordinance or contract, can impose upon a public utility essential to the welfare of the people, conditions of operation or maintenance which would confiscate its property or destroy its power to serve the public. *Page 60 
We are quite of opinion that there is no distinction in principle between the obligation (if, indeed, any was imposed by the mere permissive ordinance in question) on the part of the street railway company to maintain two spur tracks, not indispensable to the performance of its interurban duties, at a cost of operation which would preclude them from carrying on and maintaining its interurban system for the benefit of the people of the State served by that convenience, and the duty to exact a reasonable rate for service. Both relate to adequate performance of obligation to the public and are controllable by the Legislature or its authorized agency, the Public Service Commission. [Selectmen v. Cit. St. Ry., 199 Mass. 394.] It is well stated in a recent meritorious publication, viz: "It is settled that the general police power of the State embraces the regulation of the service and rates of public utility enterprises for the promotion of public convenience and the general welfare." [Harvard Law Review, Nov. 1918, p. 741.] (Italics ours). See, also, Munn v. Illinois, 94 U.S. 113, and a number of other decisions, including State ex rel. Sedalia v. Pub. Serv. Com., 204 S.W. 497. See, also, Union Drygoods Co. v. Ga. Pub. Serv. Com. U.S. Sup. Ct. Ad. Ops. Feb. 1, 1919, p. 116.
As we understand the finding of the Public Service Commission upon the facts adduced in support of the complaint filed before it, the evidence conclusively showed that the two local spur tracks connected with the general interurban system could only be maintained and operated at a disastrous loss. It seems conceded that the weight of evidence fully sustains this finding of the Public Service Commission, which body only refused relief upon the notion that it was constitutionally prohibited by the terms of Section 20, Article 12, of the Constitution, supra. It has been shown that that provision of the Constitution is not restrictive of the powers of the Commission in virtue of its agency as the representative of the Legislature. *Page 61 
It necessarily follows that the judgment of the circuit court sustaining the order of the Commission dismissing the complaint must be reversed and the cause remanded with directions to the circuit court to vacate that judgment and to enter a judgment setting aside the finding of the Commission and remand the cause to that body with directions to proceed in a manner not inconsistent with this opinion. It is so ordered.