THE STATE at Relation and to Use of DETROIT-CHICAGO MOTOR BUS COMPANY (Ni-Sun Lines) v. PUBLIC SERVICE COMMISSION, Appellant.—23 S. W. (2d) 115.

Division One, December 30, 1929.

*D. D. McDonald* and *J. P. Painter* for appellants.

*Oliver T. Remmers, Ernest A. Green* and *Charles C. Madison* for respondent.

RAGLAND, J.—On November 3, 1927, respondent, proposing to establish, maintain and operate twenty motor busses for the carriage of passengers and baggage as a common carrier by motor for hire between the cities of St. Louis and Kansas City, Missouri, over Missouri-United States Highway No. 40, applied to the Public Service Commission for a certificate of convenience and necessity. Notice of the filing of the application and of the date of the hearing thereon was duly given every common carrier that was operating in the territory proposed to be served by respondent: protests were filed by one of the motor carriers and by each of the carriers by rail: a hearing was had November 17, 1927. After hearing the evidence on the part of both the applicant and the protestants, the commission found "that the necessity for passenger transportation between St. Louis and Kansas City is adequately served by the rail and motor carriers now operating between said cities," and denied the application. Respondent (relator below) thereupon obtained a writ of certiorari from the Circuit Court of Cole County; that court upon a review of the proceedings had before the Public Service Commission reversed its order and remanded the cause with instructions to the commission to issue a certificate of convenience and necessity. The cause comes to this court on the commission's appeal.

On and prior to November 3, 1927, respondent was operating as a motor carrier from Detroit to Chicago, from Chicago to St. Louis and from St. Louis to Kansas City, Kansas. The certificate it seeks, however, is for purely intrastate business—the carrying of passengers and baggage by motor between St. Louis and Kansas City. And that carriage is to be limited to through carriage: it does not propose to do any local business between the termini of the proposed route, nor to accept passengers for intermediate points or to take them on at such points.

For a while respondent charged a fare of $3 for carrying a passenger from St. Louis to Kansas City or from Kansas City to St. Louis: subsequently it raised the fare to $3.50, then to $4, and finally to $4.50. This last it averred in its application is the reasonable fare, and it asks the commission to put its approval on it as such. The fare between St. Louis and Kansas City by rail is $10.04; the fare authorized by the commission to be charged by certificated motor carriers operating between the two cities, and which they do charge, is $7. Respondent's manager stated at the hearing that

his company then operated, and proposed to continue to operate, two busses out of Kansas City daily and two out of St. Louis daily, one leaving each terminus at nine o'clock in the morning and arriving at the other terminus at 6:30 P. M., another leaving each terminus at eight P. M. and arriving at the other at 5:30 A. M. The evidence taken at the hearing discloses that five railroad companies, the Wabash, the Missouri Pacific, the Rock Island, the Chicago & Alton and the Burlington, operate twelve passenger trains each way daily between St. Louis and Kansas City; and that two motor carriers, the Yelloway, Inc., and the Purple Swan Safety Coach Line, operate between the two cities ten busses each way daily. Passengers on the vehicles of all these carriers, so far as appears, are carried directly from one of said cities to the other without change or transfer. Several of the passenger trains leave the termini at approximately the same time as respondent's busses and accomplish the passage in an hour or more less time. The schedules of the two authorized motor carriers were not shown. Whether they require an appreciably longer time than respondent for making the trip from one city to the other, owing to the stops at intermediate points to receive or discharge passengers, is left dark.

It further appears from the evidence that the railroad companies operating passenger trains between St. Louis and Kansas City can with their present equipment and facilities easily carry many more passengers than they do now; that since the completion of the state hard-surfaced roads there has been a great falling off of their business, particularly as to passengers carried in coaches, which the companies attribute to automobile and motor-bus competition. Prior to the advent of respondent with its busses on Highway No. 40 the busses of the Yelloway, Inc., and the Purple Swan Safety Coach Line were at all times comfortably filled with passengers, but since that time they have been less than half filled, while respondent's busses have been loaded to capacity. Respondent says that this situation has arisen from a public demand for a non-stop service between St. Louis and Kansas City (respondent's busses stop only at rest rooms and gasoline filling stations), but protestants insist that it is owing to the great difference in the fare collected by respondent and that charged by the authorized motor carriers, and we so find. There is no other suggestion in the evidence or otherwise that the transportation service afforded by the rail and authorized motor carriers between the two cities is not in all respects safe, adequate and dependable.

The commission found that respondent was not actually operating as a motor carrier between St. Louis and Kansas City, rendering a satisfactory and dependable service, on the 1st day of December, 1926, within the meaning of Section 11 of the Motor Bus

Regulation Act, passed in 1927. [Laws 1927, p. 409.] Such conclusion of fact was inescapable under the evidence, and we adopt it.

The power to grant, or to refuse to grant, to a public utility a certificate of convenience and necessity is committed to the discretion of the Public Service Commission, within defined limits, and not to the circuit court or to this court. Respondent seeks to justify the judgment of the circuit court reversing the commission's order and remanding the cause with instructions to grant the certificate applied for, on the ground that the action of the commission in making its finding and order was quasi-judicial, and that being true a court of equity upon review was bound to affirm the order, set it aside, modify it, or to make one of its own, according to what it deemed right and equitable under the facts found by it. It would be a work of supererogation at this late day to enter upon an analysis of governmental powers in order to point out the line of demarcation between those with which the Public Service Commission is invested by statute and those exercised by the courts. The constitutionality of the Public Service Commission Law has been considered by this court from every angle in that regard, and the chart it furnishes may now safely be followed.

It is true that all orders of the commission are subject to judicial review, and that suits brought for such review must be "tried and determined as suits in equity." But after the chancellor has made his own finding of the facts the only application he can make of them is to determine from them whether the order under review is reasonable and lawful. If he finds it both reasonable and lawful it is his duty to affirm it: if he finds it either unreasonable or unlawful, he must set it aside. He cannot modify it or entirely displace it with one of his own, as was done by the circuit court in this case. [Railroad v. Public Service Commission, 266 Mo. 333, 346, 181 S. W. 61; State ex rel. v. Public Service Commission, 308 Mo. 359, 378, et seq., 272 S. W. 957.] When an order is set aside the court may remand the cause to the commission for such further action *as it may desire to take*: the court oversteps the boundaries of its jurisdiction when it attempts to tell the commission what the action should be. There seems to be one exception to this: when the commission has excluded evidence that it should have received, the cause may be remanded with directions that it hear such evidence and then make a new order. [Sec. 10522, R. S. 1919.]

Respondent having failed to establish that it was rendering a satisfactory and dependable service by motor vehicle between St. Louis and Kansas City on December 1, 1926, there is no presumption under said Section 11 of the Motor Bus Regulation Act that the service it now proposes is one of public convenience and necessity: on the contrary it has the burden of showing that the com-

mission's order refusing it a certificate is unreasonable or unlawful. [Sec. 10535, R. S. 1919.] With this status in mind the action of the commission is to be considered.

The commission's power with respect to granting certificates of convenience and necessity to motor carriers is defined by Section 4 of said Motor Bus Regulation Act. That section provides: "If the commission shall find from the evidence that public convenience and necessity will be promoted by the creation of the service proposed, or any part thereof, as the commission shall determine, a certificate therefor shall be issued . . . In determining whether or not a certificate of convenience and necessity should be issued, the commission shall give reasonable consideration to the transportation service being furnished by any railroad, street railway or motor carrier, and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout twelve months of the year and the effect which such proposed transportation service may have upon other forms of transportation service." The act further provides that no vested right shall accrue to any certificate of convenience and necessity, but that the same may be revoked after notice and hearing, if the commission finds that the carrier operating under it does not give convenient, efficient and sufficient service. [Secs. 4 and 8.] It will be noted that the commission's discretion is to be controlled by three principal considerations: (1) the transportation service being furnished by other carriers; (2) the permanency and continuity of the proposed service; and (3) the effect which the proposed service may have upon other existing forms of transportation service. The statute in this respect is in complete harmony with the general principles which obtain as to state regulation of public utilities.

"The very purpose of regulation by state agencies is to secure uniformity of operating conditions among similar utilities and to save the economic waste that follows unregulated and useless duplication of service, which destroys itself and fails to furnish permanent satisfactory service at fair rates and cripples the existing necessary systems, commits waste and impairs the public service." [Pond on Public Utilities (3 Ed.) sec. 731, p. 778.]

The order in question is one clearly falling within the discretionary power of the commission; it is expressly based on the first consideration mentioned in the statute; under the evidence it could equally well have been placed upon both the first and third.

As already forecast, we find the order under review both reasonable and lawful. Accordingly the judgment of the circuit court is reversed and the cause remanded with directions to that court to enter its judgment affirming the order. All concur.