STATE EX REL. CITY OF KIRKWOOD v. PUBLIC SERVICE COMMISSION OF MISSOURI ET AL., Appellants.—50 S. W. (2d) 114.

Division One, May 27, 1932.

*D. D. McDonald, T. E. Francis* and *O. P. Owens* for appellants.

*Wurdeman, Stevens & Hoester* for respondent.

510

STURGIS, C.—This is an appeal by the defendant Public Service Commission of Missouri from the judgment of the Circuit Court of St. Louis County, by which judgment the Circuit Court of St. Louis County on a writ of review set aside and annulled an order made by the Public Service Commission of this State permitting the St. Louis Public Service Company, a corporation of this State, owning and operating the street railroads of the city and county of St. Louis, to abandon a portion of its line of street railroad known as the Osage Hills line west and southwest of the intersection of Clay Avenue and Woodbine Avenue, in the city of Kirkwood, to the terminus of said line at the Osage loop, a distance of approximately two and one-half

miles. The trial court on the writ of review ruled that the order of the Public Service Commission granting the St. Louis Public Service Company, the owner and operator thereof, the right to take up its tracks and abandon the operation of this part of its electric street railway line was unreasonable and unlawful.

The case originated in this way: The St. Louis Public Service Company applied to the Missouri Public Service Commission for an order permitting it to remove its tracks and abandon the operation of this part of its Osage Hills line, describing the route to be abandoned, and stating, as grounds therefor:

"(4) The income derived from the operation of those portions of said lines sought to be removed is and always has been insufficient to pay operating expenses and to yield a return upon the investment, and the cost to applicant of reconstructing tracks and improving that portion of the streets occupied by its tracks, if it were forced to so reconstruct its tracks and improve such portions of said streets, would be exorbitant.

"(5) Applicant proposes, if it is authorized to remove its tracks as herein prayed, to substitute for that portion of its street railway lines sought to be removed, adequate bus service to serve the territory affected by the removal of the tracks if the patronage of that portion of its system sought to be removed justifies the substitution of such bus service, and applicant proposes to operate such bus service so long as the same is self-supporting."

The St. Louis Public Service Company stated, and it so appeared in the evidence taken, that the immediate cause of its making application at this time to be allowed to abandon this part of its line of street railroad was that the city of Kirkwood was preparing to and intended to reconstruct and repave Woodbine Avenue and Quinette Road, along and over which this line extended, and this would necessitate a reconstruction and relaying of its tracks at very large expense.

A protest was filed by the city of Kirkwood and a full hearing was had by the Public Service Commission at Kirkwood, St. Louis County. The Public Service Commission, after hearing the evidence, made a finding of the facts substantially as follows:

The application of the St. Louis Public Service Company is for authority to remove that part of its tracks of its Osage Hills line in the city of Kirkwood, St. Louis County, Missouri, from the intersection of Clay Avenue, a north and south street, and Woodbine Avenue, an east and west street, running thence west and southwest to a loop at or near Osage Hills, a distance of approximately 2.45 miles, and to substitute bus service for that portion of its street railway lines.

The St. Louis Public Service Company operates an extensive system of electric street railways in the city of St. Louis and its suburban

territory. The Kirkwood-Ferguson line runs substantially east and west between Ferguson, a suburb of the city of St. Louis, and Magnolia Avenue loop on Woodbine Avenue in Kirkwood. The Magnolia Avenue loop is situated on Woodbine Avenue at Magnolia Avenue and is a part of the line proposed to be abandoned. It is a half mile from the corner of Clay and Woodbine avenues, the point where the proposed abandonment starts. The Osage Hills line operates from Clay on Woodbine Avenue, passing the Magnolia Avenue loop, and thence on to the Osage Hills Country Club, both lines being over this half mile on Woodbine Avenue. Thus the proposed abandonment includes a half mile of the Kirkwood-Ferguson line and 2.45 miles of the Osage Hills line.

Kirkwood is a city of approximately 9,100 people, according to the 1930 census. It is situated about ten miles from the limits of the city of St. Louis and is in the suburban territory of St. Louis.

The city of Kirkwood has contracted to pave Woodbine Avenue between Clay Avenue and Geyer Road, which is between Clay Avenue and the Magnolia Avenue loop. The St. Louis Public Service Company has a double track on Woodbine Avenue between these points. The city has notified the company to pave between its tracks, as provided by the ordinance. The evidence shows that the cost of reconstructing tracks and paving on Woodbine between Clay and Geyer Road is $34,340.

The city has also contracted to improve Quinette Road along which the Osage Hills line sought to be abandoned operates. The tracks along Quinette Road will have to be relocated, and the improvement of Quinette Road will make necessary extensive track reconstruction. There is no franchise obligation on the part of the company to pave between its rails. The tracks of the St. Louis Public Service Company along Quinette Road are off center for some distance. The evidence shows that if the tracks between Bach Road and Edna Avenue are relocated so as to be in the center of Quinette Road and rebuilt upon a concrete foundation with concrete paving, the cost will be $25,860. If they are shifted between the same points, using the present rail on macadam foundation with macadam paving, the cost will be $11,500. West of Edna Avenue, on Quinette Road to the loop at the end of the line, the tracks will have to be shifted to the center of the street. New rail will have to be used for this portion and the cost, with concrete foundation and pavement, will be $62,000, and on macadam foundation, with macadam pavement, the cost will be $43,190.

No contract has been let for the improvement of Woodbine Avenue between Geyer Road and George Avenue where this line leaves Woodbine Avenue. If such improvement should be made, the cost would be $29,840. There is evidence showing that this improvement is very likely to occur. The evidence, therefore, shows that the improvements

already contracted for will entail expenditures on the part of the St. Louis Public Service Company in excess of $100,000.

A check of the traffic in both directions along the whole portion of the line proposed to be abandoned shows that the average number of passengers per day is 1,424. A twelve days' check was made by the city of Kirkwood, which shows that the average number of passengers in both directions over the proposed abandonment is 1,348, is seventy-six less than the check made by the company. A check made in 1919 of the passengers using the line proposed to be abandoned showed that 1,257 passengers were carried in both directions west of Clay and Woodbine avenues, an increase of eight per cent over a period of ten years.

According to the evidence, the average number of car miles per day over this part of the line is 476. The revenue derived from this operation is $115.31, based on a full fare of 8.1 cents for each passenger, which is the average fare under the rate schedule now in operation. The revenue per car mile is 24.3 cents, whereas operating costs, including taxes and depreciation, exclusive of any return, is 36½ cents per car mile. There is also evidence in the record that if all the passengers now carried on the street cars by this line are carried by the proposed bus line, the revenue will be less than the operating costs, though the difference between margin and operating cost will be much reduced, amounting to only 3 cents per bus mile.

We do not believe that a street railway has the right to abandon a line or a portion of a line merely because it is operating at a loss. Each case must stand on its own feet. It is a matter of common knowledge that the St. Louis Public Service Company and electric street railways over the entire country have been steadily losing in traffic and revenues. Practically all electric street railways are in bad financial condition and are finding it extremely difficult to finance themselves. Without retrenchment and economy of operation, they face a dubious future. In the last ten years hundreds of miles of electric street railways have been abandoned, and the process of replacing electric street railways with busses has been proceeding steadily. It is a natural evolution in local transportation. In this case the applicant is faced with the expenditure in excess of $100,000 to continue the operation of the end of an unprofitable line. We think the opportunity should be given the company to avoid these heavy capital expenditures and to substitute less expensive bus service for its more expensive street railway operation.

Citizens of Kirkwood protested against the bus service because it did not serve all the territory served by the railway line. It is true that bus service cannot be rendered at the present time between Clay and Woodbine avenues and Osage Hills loop, along the route of the existing street car line, on account of the condition of some of the streets. Such service, however, can be rendered in the future when streets are made. Bus service in lieu of electric street railway service

is giving satisfaction both in St. Louis and in other parts of the United States where it has been substituted for street railways. It is better fitted for local transportation where traffic is not dense.

The applicant further offered, through counsel, to continue the operation of its busses until ordered otherwise by the Commission, if the Public Service Commission should grant authority to abandon its street railway lines.

The abandonment should be contingent upon the proposed bus operation extending from the Osage Hills loop into the business district of Kirkwood along Kirkwood road, in order to give persons along the route service to the business section of the city.

Thereupon the Public Service Commission made the following order:

"Ordered: 1. That the St. Louis Public Service Company be and hereby is authorized to abandon that portion of its Kirkwood-Ferguson line and its Osage Hills line west of the corner of Clay and Woodbine avenues to the Osage Hills loop, provided Woodbine Avenue shall be paved between Clay Avenue and the Magnolia Avenue loop.

"2. That if Woodbine Avenue shall not be paved between Clay Avenue and the Magnolia Avenue loop, the St. Louis Public Service Company is authorized to abandon its Osage Hills line only from the Magnolia Avenue loop to Osage Hills loop, and shall retain and operate its Magnolia Avenue loop.

"3. That orders 1 and 2 herein are conditioned upon the substitution of bus service by the St. Louis Public Service Company, which shall operate from the Osage Hills loop into the business district of Kirkwood along Kirkwood Road, and street railway service shall not be abandoned until bus service shall have been substituted.

"4. That the acceptance of this order by the St. Louis Public Service Company shall constitute an agreement upon its part not to abandon said substituted bus service without an order of this Commission after hearing.

"5. That the Commission shall retain jurisdiction of this cause to make such other orders as may be necessary or proper."

The city of Kirkwood filed a motion for rehearing before the Public Service Commission, and both parties filed motions to have the order of the Commission modified. The motion for rehearing by the city was overruled, but on its motion to modify the order made by the Commission, the following additional order was made:

"Ordered: 3a. That said bus service so substituted shall not be made a separate-fare zone, but the schedule of fares now or hereafter in effect on the street railway system of the St. Louis Public Service Company shall apply to said bus service, and free transfers shall be given from said bus line to the connecting street railway line, and from the street railway line to said bus line, so that there shall be no increase in fare between the district served by the street railway line

authorized to be abandoned and any point within the city of St. Louis.''

The city's motion to modify was then overruled in other respects. The motion to modify filed by the St. Louis Public Service Company was held in abeyance and will be noticed later on.

A petition for a writ of *certiorari* or review of the proceedings had by the Public Service Commission in this matter was then filed in the Circuit Court of St. Louis County. Such writ was granted and the Public Service Commission made and filed therein due return, certifying to said court a copy of all its proceedings, with the evidence taken, under date of April 1, 1931.

Said cause came on for hearing in the Circuit Court of St. Louis County on May 31, 1931, and, as the record here recites, was submitted to the circuit court on the record of and the evidence and exhibits introduced before the Public Service Commission and certified to by it. The circuit court thereupon reviewed the proceedings had by the Public Service Commission on the certified record of such commission and made and entered its finding and judgment therein as follows:

''This proceeding comes before the court on a writ of *certiorari* or review for the purpose of having the reasonableness or lawfulness of an original order or decision of the Public Service Commission determined.

''The St. Louis Public Service Company, a street railway corporation, engaged in the transportation of passengers for hire in the City of St. Louis and St. Louis County, applied to the Public Service Commission for permission and authority to remove the tracks of its Osage Hills line in the City of Kirkwood, St. Louis County, Missouri, extending from the intersection of Clay and Woodbine avenues westwardly and southwestwardly to the loop at or near Osage Hills. The tracks which applicant seeks to abandon and remove are double electric street railway tracks, extending from the intersection of Clay and Woodbine avenues, westwardly on Woodbine Avenue to a point at or near George Street or Andrews Avenue, thence westwardly and southwestwardly over private right of way to Quinette Road at or near Bach Road, thence westwardly and southwestwardly on Quinette Road and along private right of way abutting Quinette Road to the loop at or near Osage Hills, a total distance of approximately 2.45 miles. The Osage Hills line of applicant is operated over the entire route mentioned, while the Kirkwood-Ferguson line of applicant is operated in part over said tracks, namely, on Woodbine Avenue from Clay Avenue to Magnolia Avenue, the southern terminus of said line, a distance of about a half mile.

''The City of Kirkwood has let a contract for the improvement of Woodbine Avenue between Clay Avenue and Geyer Road, providing for a concrete pavement, and said City has· requested applicant to

improve its tracks with the same material as that with which the rest of the street is improved.

"The County of St. Louis, under its recent bond issue, is improving or has improved Quinette road, including that portion in which and along which the tracks of applicant are located.

"The applicant insists that because of the great expense to which it would be put were it required to improve, reconstruct and relocate its tracks along Woodbine Avenue and Quinette Road, and because of the fact that that portion of its line is not producing and has not, for many years, produced sufficient revenue to pay operating costs and the cost of maintenance, said applicant seeks the right to abandon its aforesaid tracks.

"The City of Kirkwood and certain citizens protested the abandonment.

"After a full hearing the Commission on the 28th day of June, 1930, rendered its report and order.

"On the 19th day of February, 1931, the Commission overruled a motion for rehearing and modified the original report and order only in reference to certain substituted bus service.

"It will be seen from the provisions of the order of the Commission that the St. Louis Public Service Company's authority to abandon that portion of its street car line on Woodbine Avenue between Clay Avenue and the Magnolia Avenue loop is conditioned upon this portion of the avenue being paved, and in the event Woodbine Avenue be not paved between certain points that portion of the line known as Magnolia Avenue loop shall remain in operation.

"In State v. Public Service Commission, 297 S. W. 47, l. c. 49, the court said:

" 'It is true that the order of the commission may be reviewed, but it is provided that:

" ' "The burden of proof shall be upon the party adverse to such commission, or seeking to set aside any determination, requirement, direction or order of said commission, to show by clear and satisfactory evidence that the determination, requirement, direction or order of the commission complained of is unreasonable or unlawful as the case may be." [Sec. 5247, R. S. 1929.]

" ' 'The test is: Is the order of the commission unreasonable or unlawful? [State ex rel. v. Busby, 274 S. W. 1067; State ex rel. v. Public Service Commission, 271 Mo. 155; State ex rel. v. Public Service Commission, 275 S. W. 940.] '

"The authority granted the Commission in cases of this kind is found in Subdivision 3 of Section 5174, Revised Statutes of Missouri 1929, and contains the following provision:

" 'The Commission shall have power, after hearing, to issue such certificate, as prayed for, or to refuse to issue the same, or to issue

it for the construction of a portion only of the contemplated railroad or street railroad or extension thereof, or for the partial exercise only of said right or privilege, and may attach to the exercise of the rights granted by the certificate such terms and conditions as in its judgment the public convenience and necessity may require.'

"The Legislature authorized the Public Service Commission to issue a certificate for the partial exercise only of a right or privilege; and in addition it may attached to the exercise of the rights granted by the certificate such terms and conditions as in its judgment the public convenience and necessity may require. This court does not believe that a provision in reference to the paving of a public street in Kirkwood is included in the phrase 'such terms and conditions as in its judgment the public convenience and necessity may require.' This court does not believe that by this phrase the Legislature intended to take away from a city of the fourth class the control, management and improvement of its streets. In no uncertain terms the Legislature has spoken otherwise. A city of the fourth class has exclusive control over all its streets, alleys, avenues and public highways and the improvement of same (Sec. 7047, R. S. 1929). Kirkwood is a city of the fourth class, and its statutory right to have exclusive control over its streets, alleys and public highways cannot be abridged or interfered with, unless the law clearly delegates such control or interference to some other authority.

"This court is of the opinion that the order clearly usurps and interferes with the police power and the statutory rights of the City of Kirkwood; the order of the Commission is an infringement of the City's rights; a form of legal intimidation or coercion. The Commission says to the City: 'If you pave Woodbine Avenue we will permit the Public Service Company to abandon its tracks.' This is in excess of the Commission's power. It has no power or authority except such as the Legislature gave it, and the right to determine whether or not a city shall pave its streets has been delegated by the Legislature to another agency, to-wit, the municipality.

"This court is of the opinion, and finds, that said order is unreasonable and unlawful in that the Commission had no authority to attach to said order the provisions in reference to the paving of Woodbine Avenue.

"Ordered by the court that the order made by the Public Service Commission of the State of Missouri on the 28th day of June, 1930, and as modified on the 19th day of February, 1931, be and is hereby reversed, set aside and for naught.held, and said cause is remanded to said Public Service Commission for further action. Costs against respondents."

From this judgment the defendant Public Service Commission has duly taken and perfected its appeal to this court.

518

■ A proper disposition of this case by this court lies within narrow compass. That it is within the powers and jurisdiction of the Public Service Commission, under the powers granted that body by the Legislature, to grant to or withhold from a street railroad the right and power to abandon a part or spur of its existing line, has been repeatedly held by this court. [Southwest Missouri Railroad Co. v. Public Service Commission, 281 Mo. 52, 219 S. W. 380; State ex rel. v. Missouri Southern Railroad Co., 279 Mo. 455, 214 S. W. 381; State ex rel. Carthage v. Public Service Commission, 303 Mo. 505, 260 S. W. 973; City of Cape Girardeau v. Railway Co., 305 Mo. 590, 267 S. W. 601.] The power of the Public Service Commission is an exercise of the police power of the State granted by the law-making power to that tribunal and overrides all contracts, privileges, franchises, charters, or city ordinances. ■ The exercise of such police powers are by the statutes granting same made subject to review and control by the courts as to being unreasonable or unlawful. The only question for the circuit court on the writ of review, and by this court on appeal, is whether the orders made by the Commission subserve the public welfare in a manner and to an extent reasonable and lawful, and this question is to be solved regardless of contract rights or obligations, except as such enter into the reasonableness or lawfulness of the orders made. [City of St. Louis v. Public Service Commission, 276 Mo. 509, 526, 207 S. W. 799.]

An examination of the finding and judgment of the circuit court discloses that such court did not find that the order of the Commission permitting an abandonment of the part of the street railroad designated in the order is unreasonable. ■ ■ The trial court correctly ruled, on the authority of State ex rel. v. Public Service Commission, 297 S. W. 47, 49, that under the statutes the burden of proof rests on the party seeking to have the order of the Commission set aside to show by clear and satisfactory evidence that the order of the Commission complained of is unreasonable or unlawful (Sec. 5247, R. S. 1929); and all the authorities are to this effect. [Chicago. B. & Q. Railroad v. Public Service Commission, 266 Mo. 333, 341, 181 S. W. 61; State ex rel. v. Public Service Commission, 271 Mo. 155, 196 S. W. 369; State ex rel. v. Busby, 274 S. W. 1067; State ex rel. v. Public Service Commission, 321 Mo. 297, 10 S. W. (2d) 946; State ex rel. v. Public Service Commission, 324 Mo. 270, 23 S. W. (2d) 115.]

In State ex rel. Harrisonville v. Public Service Commission, 291 Mo. 432, 457, 236 S. W. 852, this court said: "The reasoning of the Commission seems to us to be sound. However, we are not concerned with the expediency or wisdom of the order made. The findings of the Commission are by statute made prima-facie lawful, and we will ascribe to them the strength due to a judgment of a tribunal

created by the Legislature and informed by experience. While the conclusion reached is subject to review, nevertheless, if the power of the Commission has not been arbitrarily exercised, or rates established which are unreasonable, and if the order made is not violative of the Constitution, or wanting in conformity to statutory authority, and is supported by substantial evidence, we accept it as final. We are of the opinion that the order here presented is in conformity with the law, is supported by the evidence, and is not subject to just criticism.''

In State ex rel. Motor Bus Co. v. Public Service Commission, 324 Mo. 270, 275, 23 S. W. (2d) 115, this is said: ''The power to grant, or to refuse to grant, to a public utility a certificate of convenience and necessity is committed to the discretion of the Public Service Commission, within defined limits, and not to the circuit court or to this court. . . . It is true that all orders of the commission are subject to judicial review, and that suits brought for such review must be 'tried and determined as suits in equity.' But after the chancellor has made his own finding of the facts, the only application he can make of them is to determine from them whether the order under review is reasonable and lawful. If he finds it both reasonable and lawful it is his duty to affirm it: If he finds it either unreasonable or unlawful, he must set it aside.''

And this court has more recently said in a case not yet reported, State ex rel. Alton Transportation Co. v. Public Service Commission, 330 Mo. 1, 49 S. W. (2d) 614. ''Upon this review the question is not whether the court, if the matter were before it, would make the same order made by the Commission, but only whether the order as made by the Commission is reasonable and lawful. [Sec. 5234, R. S. 1929.] To justify a reversal of an order of the Commission falling within its discretionary power, on the ground that such order is unlawful, it must appear that the action of the Commission was arbitrary or without reasonable basis, and the burden of showing that the Commission's order refusing a certificate is unreasonable or unlawful is upon the applicant. [Sec. 5247, R. S. 1929.]''

We, therefore, agree with and confirm the trial court's action in refusing to set aside the order of the Public Service Commission as being unreasonable.

The trial court did, however, set aside the order of the Public Service Commission on the ground that same is unlawful. This necessarily is a pure question of law to be reviewed here. That court found the unlawfulness of the order of the Commission in that it ordered (1) that the Public Service Company be authorized to abandon all the street car line prayed for, to-wit, west and southwest of Clay Avenue to the Osage Hills loop, the end of the line, provided Woodbine Avenue should be paved by the city from Clay Avenue west

to the Magnolia loop, a distance of one-half mile; and (2) that if such street be not paved, then such company is authorized to abandon only the part of its line from Magnolia loop west and southwest to the Osage Hills loop. The relator city construes this order to mean that the Public Service Company will be allowed to abandon this line unless the city refrains from paving this street. This trial court says the order of the Commission means and in effect says to the city of Kirkwood: "If you pave Woodbine Avenue we will permit the Public Service Company to abandon its tracks." The court then holds that the city of Kirkwood has the exclusive control over its streets, with the right to improve same at will, and in doing so cannot be subjected to "a form of legal intimidation or coercion;" that the Public Service Commission has no such authority. There may be much sound reasoning in this once you grant the premises. It seems clear to us, however, that the trial court entirely misconstrues the meaning and effect of the order of the Commission.

This order evidently means that the street railway company is permitted absolutely and in all events to take up its tracks and abandon that part of its line from the Magnolia Avenue loop on Woodbine Avenue west and southwest to the end of the Osage Hills line; that if the city of Kirkwood should carry into effect its proposition to reconstruct and pave Woodbine Avenue from Clay Avenue west to the Magnolia Avenue loop, or substantially so, then the street railway company would be allowed to abandon that part of its line between such points. The only question left open and dependent on the city's paving Woodbine Avenue was whether the abandoned portion of the line should commence at Clay Avenue or at the Magnolia loop, a half mile further west. The settlement of this question was left to the city itself. The court found that the city not only intended to but had let a contract to pave and reconstruct this street and had notified the street railway company to conform its roadbed to the new conditions of the street. The Commission might have been authorized to treat this changed condition of the street as an accomplished fact and granted the street railway company an absolute right to abandon the line beginning at Clay Avenue; but there was a possibility that the paving project might be abandoned or postponed for a considerable length of time, and in that case it was for the benefit of the city and might be unreasonable to allow the abandonment of the line between Clay Avenue and Magnolia loop on the date of the order. The question of expenditures in making necessary changes in the railway roadbed and equipment, as well as the cost of operating the line, were potent factors in determining whether an order permitting an abandonment of the whole line or only a part of it would be reasonable. It was the duty of the Public Service Commission to consider and determine whether or

not the railway company should be allowed to abandon the entire part of the line asked for or only a part thereof, and that, in turn, required a consideration of the capital expenditures made necessary by changed conditions, as well as the cost of operation. The Commission took cognizance of the right of the city of Kirkwood to improve its streets if and when it saw fit, and, instead of intending to coerce the city in that respect, gave it the largest freedom possible. The street car company also recognized this right of the city and that it would be necessary for it to reconstruct and relocate its tracks in conformity with the reconstructed and repaved street. This certainly would not curtail the right of the street car company to ask for, or the Public Service Commission to grant, the right to abandon a part of its line of track made so expensive to reconstruct and operate as to be confiscatory. The order is more reasonable from the city's standpoint, and not more unlawful, than if the Commission had made an order unconditionally and without more permitting the abandonment of the street car line from Clay Avenue to the end of the line.

■ And in this connection the city says that the order of the Commission as made interferes with and renders impractical its contract to pave Woodbine Avenue, since that contract is based on the street railway company paving its part of the street. As said by GRAVES, J., in City of Cape Girardeau v. Railway Company, 305 Mo. 590, 606, 267 S. W. 601: "The Public Service Commission is not a court, and cannot undertake to either enforce or abrogate contracts. It deals with common carriers (by virtue of the written law) upon the theory of public service, and not in view of any contract. What contracts may have been made is not a real consideration of the Public Service Commission, under its limited authority. If a concrete case comes within its purview, the Commission is authorized to make orders (under the police power) which will best subserve the public welfare. This is irrespective of contract rights."

■ It is also urged, though the trial court does not so hold, that the order of the Commission is unlawful because coupled with the condition that bus service be substituted by the street car company between the business part of the city and the end of the abandoned street railway line, and that the acceptance of the order made shall constitute an agreement on its part not to abandon the bus service at any time without a further order of the Commission after a hearing. This annexed condition is said to be unlawful because such bus service cannot be inaugurated or maintained without the consent of the city. This is said to encroach on the exclusive right of the city to license and regulate the use of its streets. We again say that this is for the benefit of the city. The Commission could have granted the right to abandon the street car service without provid-

ing for the substituted bus service, but it also had a right in granting the privilege of abandoning street car service to do so conditionally, and to this end imposed on the operating company the burden of inaugurating and maintaining motion bus service. We grant that the city has the right to refuse the use of its streets for such motor bus service, or to arrange with some other company or individual to furnish transportation facilities, in which case the Commission may by further order relieve the St. Louis Public Service Company of this burden or privilege. In fact, that company filed its motion to have the Commission modify its order in that respect on the ground that the city was refusing to license the motor busses to be used in such substituted service. The Commission, however, took it that the city was merely doing this to uphold its position of opposition to the abandonment of the strtect car service on this Osage Hills line. That motion to modify was left still pending and if the city does not want the substituted motor bus service after the rights of the parties are fully settled, it cannot and doubtless will not be forced to accept same. The Commission retains jurisdiction in any such controversy.

Relator relies on the case of State ex rel. United Railways v. Public Service Commission, 270 Mo. 429, 192 S. W. 958. It was there held that the Public Service Commission had no power to compel a street railway company to extend its line on a new street or into new territory, and therefore no power to order such company to apply for a franchise to do so—a different proposition than that here presented. It was there pointed out that the power to control an existing railway line to the extent of compelling it to put in new switches or make other improvements which were merely ancillary to the existing line, was quite different than ordering an extension into new fields. Here the Commission has the power in authorizing the street car company to abandon an existing line to require such company, as a condition precedent, to substitute bus service therefor; or at least the city has no right to object, though it may refuse to license such use of its streets. If the city chooses to do that, then, as we have said, this will be good reason for the Public Service Commission to relieve the company of that burden.

What we have said also disposes of the point that the city may refuse, under its zoning ordinance, to permit the St. Louis Public Service Company to construct and operate a loop on land near the junction of Clay and Woodbine avenues, which will be the terminus of its line. Some other matters are discussed, but what we have said disposes of the real issues in the case.

The result is that the judgment of the circuit court setting aside and annulling the order of the Public Service Commission is reversed and the cause is remanded with directions to that court to

enter judgment approving and confirming the order of the Public Service Commission. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.