STATE OF MISSOURI ex rel. NORTH BRITISH & MERCANTILE INSURANCE COMPANY, LTD., a Corporation, Relator, v. JOSEPH B. THOMPSON, Superintendent of the Insurance Department of the State of Missouri.—52 S. W. (2d) 472.

Court en Banc, August 5, 1932.

R. J. Folonie and E. R. Morrison for relator.

*Stratton Shartel*, Attorney-General, for respondent; *G. C. Weatherby* of counsel.

WHITE, J.—The petition of relator, a stock fire insurance company, states that in December, 1929, relator made a change in its rates for fire and wind storm insurance through the medium of the Missouri Inspection Bureau increasing the level of said rates 16-2/3 per cent, and immediately after filed such increase with the respondent, Superintendent of Insurance. The effective date of said increase was extended by the superintendent from time to time to June 1, 1930. In May, 1930, the increase was denied by the respondent, Superintendent of Insurance. The relator and other stock fire insurance companies, affected likewise by the order denying the increase, filed a petition for review in the Circuit Court of Cole County. Pending the action pursuant to the order of the Circuit Court of Cole County, relator impounded with the respondent, Superintendent of Insurance, the difference between the said increased rate and the former rate. This it is claimed is in accordance with the provisions of Section 5874, Revised Statutes 1929.

The petition then states that the requirement of Section 5874 has been violated by the Superintendent of Insurance; that he instead of requiring good and sufficient surety bonds has accepted from the banks in which said sums are deposited paper executed solely by the respective banks and said banks have respectively made a pretended pledge of certain government bonds and State bonds as security for the protection and safeguarding of the money without

authority to give any preference to such deposit over any other deposit in said banks, and therefore the supposed pledge does not make the said bonds good or sufficient bonds as the statute required. The petition then prays that this court award a writ of mandamus commanding and requiring Joseph B. Thompson, Superintendent of the Insurance Department of the State of Missouri, to deposit said funds in responsible banks and to require banks in which said funds are deposited to give good and sufficient bonds in a penal sum not less than the full amout of said deposits in said banks, respectively, with good and sufficient surety or sureties for the safe-guarding and, proper accounting of said funds so deposited in bank, and commanding and requiring that said funds be withdrawn from any bank or banks failing to give good and sufficient security.

The petition attaches as an exhibit a motion filed in·the Circuit Court of Cole County, praying the court to set aside an order made by said court March 5, 1931, providing for the impounding and securing of funds in the manner complained of. A copy of the order of court attached shows this motion was overruled.

Section 5874, Revised Statutes 1929, provides that the orders of the Superintendent of Insurance shall be reviewable by the courts and the entire matter treated *de novo,* but the burden of proof as to the unreasonableness or injustice of any order made by the Superintendent of Insurance shall rest upon the party appealing from such order. The court has authority to sustain or set aside, such order. The section then goes on to provide that during a review by the courts as to reduction of rates, insurance companies shall deposit with the Superintendent of Insurance *"an amount equal to the difference between the rates fixed by the superintendent in his order and those in effect prior thereto,* such funds to be held by the superintendent of insurance to await the result of such review, . . . The superintendent shall deposit all such funds so held by him in responsible banks and shall require good and sufficient bond for safe-keeping and proper accounting."

The respondent filed his return to the alternative writ of mandamus and the relator filed in this court his motion for judgment on the pleadings, therefore the matter will be determined by the facts admitted and affirmatively stated in the respondent's return. The return admits the facts in relation to the petition for the increase of rates and the action of the superintendent in denying the increase and the pendency of the action in the circuit court and impounding the increase in rates. It alleges that the impounded money is being held in responsible banks, and avers that it has at all times complied strictly with the letter of the statute in the handling of such funds. The return then sets out the order made by the judge of the circuit court June 5, 1930, ordering the deposit of the 16-2/3

per cent increase with the Insurance Department, with the specific report in detail of the policies of insurance affecting the amount of premium, etc., of such policies. On October 6, 1930, the order was modified. The order of modification is not important and need not be set out.

On March 5, 1931, the respondent filed a petition asking a further modification of the original order, so that depositories in lieu of surety bonds might accept United States government bonds and bonds of the State of Missouri. The court sustained the petition in an order which recites as follows: "And it appearing to the court that in some instances it is practically impossible for said depositories to procure surety bonds as in said order required, and that great delay frequently arises before said surety bonds may be procured, and that in the meantime large sums of money are in the hands of petitioner awaiting deposit but that cannot be deposited until said surety bonds are procured and on which no interest can be earned until deposited, and it further appearing to the court that the return of said money so deposited with interest may be reasonably safeguarded and insured by the acceptance of the corporate bond of said depository together with United States Government bonds and bonds of the State of Missouri."

It was therefore ordered that the order of June 5, 1930, and all subsequent modifications thereof be modified so that the Superintendent of Insurance might accept in lieu of surety bonds the private bond of a depository on condition that the depository transfer to the Superintendent United States bonds and bonds of the State of Missouri vesting title to the same in the superintendent "as trustee of said bonds" to be divested when he fully accounts for and pays over the moneys and interest, etc.

The order was again modified by the court January 28, 1932. The modification order recites that, owing to the depressed business condition in the United States and owing to the numerous failures of business, surety companies generally which are authorized to do business in Missouri have adopted a policy refusing to write bonds securing the deposits of state and national banks, and that a small number of surety companies of limited responsibility have written bonds in a limited amount but the rate has been and is prohibitive, being at the present time $1.60 for $100 face amount of said bonds and that the amount of such bonds obtainable is not and will not be sufficient to protect and safeguard the funds. The order then continues:

"2. The court further finds that by reason of the facts aforesaid strict compliance with said statute has been rendered impossible and that it is the duty of the defendant to take such action as will best accomplish the objects and purposes of the statute."

It is declared to be impossible for the defendant to safeguard the interests of the funds by good and proper security by bonds or otherwise in the event the same are deposited in a bank and that it is therefore necessary and the duty of the depository of such funds to invest all funds hereafter coming into his hands in securities which are legal and least liable to fluctuations in the open market. The court then made an order, as follows:

"That the defendant Joseph B. Thompson be and he hereby is ordered and directed to invest any and all funds now or hereafter coming into his hands as depository and trustee in this case in short-term obligations of the United States of America and that the securities representing said obligations to be deposited by him, the said Joseph B. Thompson, in safe deposit box in some bank or trust company selected by him, and that said Joseph B. Tompson shall from time to time and when and as such securities are so purchased by him and so deposited in said safe deposit box, give bonds executed by good and responsible surety companies doing business in the State of Missouri, said bonds to be conditioned that the said Joseph B. Thompson shall safely keep said securities and shall produce the same upon the order of this court, and shall properly account for said securities and interest thereon, and otherwise conditioned as the court may direct, the form of said bond to be approved by this court, and the penal amount of said bonds to be at all times equal to the face amount of securities so purchased and held by the said defendant; it is further ordered that the said Joseph B. Thompson, as defendant herein, shall not be held responsible for any depreciation in the market value of such securities or for any loss that may be incurred by reason of such depreciation in market value in event that same will be sold by order of this court."

The order then recites that the plaintiffs in open court consented to this order upon the express condition that they reserve all rights to apply to the courts either in this or in other proceedings for orders, judgments or decrees with respect to their deposit and safe-keeping.

The return alleges that it was practically impossible to procure surety bonds covering the deposit of the funds. That following the order of March 5th the respondent received and deposited in Jefferson City depositories, in the Central Missouri Trust Company a total of $192,862.03, and in the Exchange National Bank a total sum of $99,783.13, taking from them their corporate bonds with the pledge of United States bonds at all times equal to the total of the deposits. That he took such pledges in the belief that under conditions as they existed and still exist it was the most practicable and economical course and the one which procured greater return than any other means available; that it was a substantial compliance with Section 5874.

1152

Respondent then alleges that, by reason of the statute requiring the deposit of such funds with him as a public officer together with the trust character of said funds, they are to be treated as public funds and the depositories have full authority to pledge their assets to secure such funds. The return then sets out the individual bonds of the two banks mentioned.

I. The relator contends that under the statute the funds deposited with the banks are general deposits; that the relation of debtor and creditor exists between the depositor and the bank and the deposit is not entitled to preference; that any security with government bonds would not be available in protection of the funds in case of insolvency of the bank and for that reason Sectin 5874 is not complied with in that it requires surety bonds which would protect the deposits without imperiling the assets to which the general creditors have recourse.

The respondent asserts that the funds accumulated under Section 5874 are public funds and the banks where they are deposited may pledge its assets to protect them. We find it unnecessary to decide that question for reasons which will appear.

In this proceeding the prayer for relief is that this court will award a writ of mandamus commanding Joseph B. Thompson, Superintendent of Insurance of the State of Missouri, to deposit the money under consideration in responsible banks and to require said bank in which said funds are deposited to give good and sufficient bonds in a penal sum not less than the full amount of deposit.

The relief demanded, therefore, is that this court order the Superintendent of Insurance to perform an impossibility. It is stated in the return, and admitted in the motion for judgment on the pleadings, that on account of the depressed business conditions and heavy losses of surety companies by reason of failed banks and similar institutions it became practically impossible for depositories to procure surety bonds except at a prohibitive cost. The order of court, recited in the return, states that surety companies have adopted a policy of refusing to write bonds securing deposits in banks. Naturally no bank would accept the deposits under such conditions. The order of March 5, 1931, was an attempt to meet the conditions of the statute by requiring the title to Government bonds and State bonds offered as security to be vested in the Superintendent of Insurance as trustee, such title to be divested when the depository accounts for and pays over the money. That method was not satisfactory to the insurance companies. Objections to it as effective security for preferred funds naturally appear.

The order of January 28, 1932, provided that the funds now or hereafter accumulated be invested in short term obligations of the United States which shall be placed in the safety deposit boxes.

Such securities could be cashed at any time and in the opinion of the circuit court afford ample security. In the court's inherent powers it had authority to make that sort of provision for securing the funds in the absence of ability to comply literally with the statute. The relator consented to that order and that arrangement. It applied only to funds thereafter received and could be made to apply to funds already on deposit. The respondent in his return says that if in the opinion of this court said depositories were and are without lawful authority to pledge the bonds which had been put up as security, he will forthwith withdraw said deposits and invest them as authorized by the order of January 28, 1932.. Thus it appears that the respondent is willing to obey any lawful order of court within his power for the protection of the funds in his hands.

The circuit court has ample authority to determine in what way ample security may be given for such funds.

II. Rule 32 of this court is as follows:
"Rule 32. *Granting Original Writs.* No original remedial writ, except *Habeas Corpus,* will be issued by this court in any case wherein adequate relief can be afforded by an appeal or writ of error, or by application for such writ to a court having in that behalf concurrent jurisdiction."

Plainly relator had an adequate remedy in the circuit court or by appeal. It complains that it had no appeal from the order of the court overruling its motion to set aside a former order. Doubtless that is correct. It had no reason to select a remedy in which no appeal is provided. It had ample remedy by appeal in any proper proceeding brought in the circuit court to meet the situation. The same mandamus proceeding brought here could have been brought in the circuit court. One remedy approved by the circuit court and consented to by the relator is protecting such funds in the manner provided in the order of January 28, 1932.

Other proceedings are possible by which a remedy could be achieved in the circuit court.

It is impossible for the Superintendent of Insurance to comply with the order demanded here by the relator, and a remedy is available in the circuit court and by appeal. For that reason we could not grant the peremptory writ.

III. The relator and other insurance companies affected as well as the Superintendent of Insurance treated the matter of the premium paid to the Insurance Commissioner as if the provision of Section 5874, Revised Statutes 1929, applies. That section, and the preceding section, 5873, treat only of the funds acquired by the Superintendent of Insurance where he has ordered a *reduction* and

1154

the order is taken on review to the circuit court. Section 5873 provides that the Superintendent of Insurance is "empowered to investigate the necessity for a reduction of rates." If upon such an investigation for a period of five years it appears the rates charged by stock fire insurance companies are producing a profit in excess of what is reasonable he shall order the reduction.

Section 5874 provides that the orders and directions of the Superintendent of Insurance, together with his findings or determination of facts upon such orders shall be reviewed by proper action in the courts and the burden of proof of the unreasonableness of any order shall rest upon the party or company appealing from such order. The court shall have authority to set aside, suspend or modify the orders under review. Then follows this provision, the more significant parts of which we italicize:

"During the pendency of such action or review, the orders and directions of the superintendent of insurance, *as to reduction of rates*, shall be suspended, but all such insurance companies shall, during the pendency *of such action or review*, deposit with the superintendent of insurance on all policies issued or renewed after the date of such order or direction, and until the final determination of such action, an amount equal to the difference between the *rates fixed by the superintendent* in his order and *those in effect prior thereto*, such funds to be held by the superintendent of insurance to await the result of such review, and in the event the orders and directions of the superintendent *be set aside, such funds shall be returned to the companies pro rata, and in the event his orders and directions shall be sustained, then such funds shall be turned over to the policy holders pro rata*. The superintendent shall deposit all such funds so held by him in responsible banks and shall require good and sufficient bond for safekeeping and proper accounting."

 Certainly that could not apply to a case where the Superintendent of Insurance has not approved a proposed *increase* of rates. The orders and directions mentioned are those of the Superintendent of Insurance *as to reduction of rates*. And in case the directions of the Superintendent *"be set aside such funds shall be returned to the companies pro rata*, and in the event his orders and directions shall be sustained then such *return shall be turned over to the policyholders pro rata*." Those very terms could apply only to a reduction of rates because the fund set aside is the difference between the prevailing rate and the rates as reduced. If the *reduction* is set aside then of course that difference would go back to the companies, and if the reduction is sustained it would go to the policyholders. What would be the effect in a case of increasing the rates? If the superintendent approves an increase of rates the difference between the prevailing rate and the rate as increased if collected and im-

pounded and the order *increasing* the rate were *set aside,* that fund would go back to the policyholders. If the order were approved the fund would go to the companies. Just the reverse of the direction in Section 5874. Therefore the conclusion of that section relating to surety bonds applies only to the funds that are accumulated under the provisions of that section in regard to reduction of rates. Section 5864, Revised Statutes 1929, relating to an increase of rates, provides that rates shall not be raised until at least ten days' notice has been given by the insurance companies to the Superintendent of Insurance *"and his approval obtained."* Nothing is said about the accumulation of a fund for the protection of anybody on account of the difference between the prevailing rates and the increased rate. The rate cannot be increased without the superintendent's approval. There is no reason for the accumulation of the difference as in the case of reduction of rate. The prevailing rate is collected until the matter is determined in the court and in the case of an increase of the rate the prevailing rate should obtain until the increase is authorized. The reason there is no provision for preservation and security of a fund to protect the companies and the policyholders in case of an *increase* of rates pending the determination of a review of the proceeding is because there should be *no fund;* no reason for accumulation of a fund. It is true the Superintendent of Insurance cannot fix the rates; he can only approve rates; nevertheless insurance companies cannot arbitrarily determine rates, fix and collect them without his approval. The insurance companies therefore had no right to collect the increase. The fund has been accumulated without authority of law. Policyholders could not be forced to pay rates 16-2/3 per cent above the approved rate. The relator having defied the restrictions of the rating statute now seeks its protection for the fruits of that violation.

Nevertheless the companies have put in effect and have collected those rates as increased. The circuit court has authorized the payment of the difference between those rates and the former rates to the Superintendent of Insurance. He has received and is still receiving the accumulation of those excess rates and he has that fund in his custody. The trial court has inherent power to protect that fund. It is not bound by the provision of Section 5874 which applies only to a decrease of rates. The court may provide for the protection of the fund in any way which to the court seems feasible for the purpose.

The alternative writ is quashed. All concur.