STATE OF MISSOURI EX REL. NORMAN B. PITCAIRN AND FRANK C. NICO-DEMUS, JR., RECEIVERS OF WABASH RAILWAY COMPANY, APPELLANTS, v. PUBLIC SERVICE COMMISSION OF MISSOURI, RESPONDENT. —111 S. W. (2d) 982.

Kansas City Court of Appeals.   December 17, 1937.

*N. S. Brown, R. W. Hedrick, J. H. Miller* and *Frank E. Atwood* for appellants.

*James P. Boyd* and *Daniel C. Rogers* for respondent.

*Williams & Hutson,* of counsel for respondent.

SPERRY, C.—M. C. Foster, who will be known herein as applicant, filed application before the Public Service Commission, hereinafter known as respondent, seeking a certificate of convenience and necessity under the provisions of Article 8, Chapter 33, Revised Statutes of Missouri, 1929, as amended by Laws of Missouri, 1931, at page 304. Norman B. Pitcairn and Frank C. Nicodemus, receivers of the Wabash Railway Company, who will be referred to herein as appellants, resisted the granting of the certificate. From an order of respondent granting the certificate they appealed to the circuit court. That court sustained the action of respondent and this appeal is prosecuted.

Applicant held a certificate authorizing him to operate as a common carrier of passengers over a route between St. Louis, Mo., Hannibal, Mo., Quincy, Ill., and Keokuk, Iowa, over State highways numbered 61 and 24. The application contained the following paragraph: "(f) Applicant desires to operate through the various cities and counties in the State of Missouri in rendering service over an irregular route." It also contained the following allegations, in paragraph (h) hereof, which shows the object and purpose of the applicant, to-wit: "Applicant states there are a number of schools and colleges located on the route and in cities authorized to be served by this applicant on its regular route; that applicant has received many requests to transport persons from schools and colleges and institutions located in towns authorized to be served by this applicant who desire to be transported to points in Missouri not served by this carrier, and where no through or joint service is being rendered. That these persons wished and desired to be transported in groups, in some instances visiting a number of points not on any regular route, and returned to their point of origin."

Before any evidence was heard by the commission appellants, orally, made the following motion:

"Your Honor, paragraph (f) of this application states (referring to document) 'that applicant proposes to operate over an irregular route, which term as used in the application means that portion of the public highways of Missouri over which a regular route has not been established.' That is practically the definition in the Missouri Bus and Truck Law, your Honor. The Wabash Receivers move that that

paragraph of the application be made more definite and certain in that applicant be required to specify the points between which and the highways over which the proposed service is to be furnished, for the reason that in its present form it cannot be determined whether the proposed service, if furnished, would be between points on a regular route or between points where through or joint service is maintained and operated, and therefore be unlawful under Subsection (e) of Section 5267 of the Missouri Bus and Truck Act.

"Paragraph (h) states: 'That applicant desires to operate through the various cities and counties in the State of Missouri in rendering service over an irregular route.' The Wabash Receivers move that this paragraph be made more definite and certain, and that applicant be required to specify the cities into and through which applicant proposes to operate, for under Section 5268 of the Missouri Bus and Truck Act this Commission is required to serve a copy of the application and a copy of the notice of hearing on the City Clerk of any city into or through which the service is to be furnished by this applicant, and such city is made a party of the complaint or to the application, and may appear and offer testimony for or against it, and in its present form manifestly it cannot be determined whether this proposed service, if furnished, would be into or through any cities in this State, and cities, of course, cannot be given notice and appear at the hearing.

"And for further reason that this protestant, Wabash Receivers, is unable to determine from the application whether the proposed service, if furnished, would affect the service now being furnished by the Wabash Receivers.

"Then we object to any further proceedings or introduction of any testimony under this application in its present form."

This motion was taken with the case. It embraces all of the matters raised in the assignment of errors before us.

Evidence offered by applicant and his employees, tended to prove the following: There are a number of colleges located in various towns served by applicant on his regular route, among them being Hannibal-LaGrange College, Lindenwood College, Culver College, and several in St. Louis; also a large number of high schools; that he had received a number of requests to furnish busses for groups of students who desired to travel from a point of origin along this route to various points on and off the regular route; that such requests were usually by teachers and students desiring to attend athletic or educational events in which the particular school was a participant, and wanted to travel in groups to point of destination in the same bus without changing from one bus or train to another and without depending on regular schedules for departure and arrival to and from the various points; that some such requests had been granted where the point of origin and of terminus were both on his route,

as well as where he could effect transfers and interchanges with connecting lines, but that not all such requests fell within those classes and, therefore not all could be met; and that no similar service, of chartered coaches which did not take on or discharge passengers en route, was being furnished in the territory sought to be served. After hearing the evidence the commission overruled the motion, as to both points, and granted a certificate authorizing the service from any point in Missouri to any other point in Missouri, under contract with respective parties or groups, but providing that, on such service, the bus employed should be chartered exclusively by the group so contracting and that no other passengers, other than members of the chartering group, should be picked up or discharged except at point of original embarkation.

A Public Service Commission, it is true, being unknown at common law, derives its authority wholly from constitutional or statutory provisions. It possesses only such powers as are thereby conferred, either expressly or by necessity or fair implication, and such incidental powers as may be requisite to carry out those granted. [51 C. J. 78; State ex rel. United Railways Company v. Public Service Commission, 270 Mo. 429, l. c. 442-443; State ex rel. Kansas City v. Public Service Commission, 301 Mo. 179, l. c. 190.]

The first question to be considered, then, is whether or not the commission properly overruled appellant's motion as to paragraph (g) of the application. Did this paragraph comply with the statute? The paragraph is almost identical in language with subsection (h) of section 5264, Laws of Missouri, 1931, defining "irregular route." It may be begging the question to say that the route sought was sufficiently described by following the language of the statute under which the authority is exercised, yet the Legislature itself attempted no more detailed definition. It is difficult to understand how applicant could have been required to be more explicit in the application, which, if granted, would, by operation of law, authorize him to travel every road in Missouri as will be seen from a reading of Article 8, Chapter 33, Laws of Missouri, 1931, pages 304 to 316, inclusive.

The first law attempting regulation of motor transportation of property or persons in Missouri, was enacted in 1927. [Laws of Missouri, 1927, pages 402, inclusive.] This was an incomplete and partial regulation, and section 4 thereof, at page 405, specifically exempts from all regulation motor carriers rendering occasional service over irregular routes. The procedural part of the Act of 1927 applied, and was designed to apply only to motor carriers over regular routes, since carriers over irregular routes needed no certificate whatever.

In 1931 the whole enactment of 1927 was repealed, Laws of Missouri, 1931, page 304, and a complete new code enacted. In the new code, section 4 of the 1927 Act, was rewritten and the exemption

as to irrgular carriers was left out of the new code; and subsection (h) of Section 5264, Revised Statutes of Missouri, 1929, as amended by Laws of Missouri, 1931, defining "irregular route," was included. Section 4, Laws 1927, became Section 5267, Revised Statutes of Missouri, 1929, which, in turn, as modified, was reenacted in Laws 1931; but it was there broken into two sections, one being section 5267 and the other section 5268, Laws of Missouri, 1931.

Section 5268, Laws of Missouri, 1931, was originally intended only to apply to applications for certificates to operate on regular routes. The Legislature made no other provision therein, or elsewhere, for procedure on applications for certificates to operate on irregular routes. Hence the confusion when it is attempted, as here, to apply its provisions to a situation for which it was obviously not designed; yet it is the only method of procedure prescribed.

When applied to an application for a certificate covering irregular route its unreasonableness is demonstrated. The applicant would be required to describe every highway in the State of Missouri over which he might desire to operate, for he is authorized to have issued to him a certificate granting him permission to operate over "that portion of the public highways over which a regular route has not been established." [Laws of Missouri, 1931, page 305, subsection (h), section 5264.] A further provision is as follows: ". . . may, within the territory permitted to be served by him (which necessarily includes the whole State of Missouri), receive persons or property at a point located on a regular route and destined to a point not located on a regular route, and receive persons or property at a point not located on a regular route and destined to points on a regular route." [Laws of Missouri, 1931, page 307, section 5267, subsection (d).] Subsection (e), immediately following the above, makes it unlawful to transport persons or property without having first obtained a permit therefor. Furthermore, section 5268, Laws of Missouri, 1931, requires the commission, ten days before the hearing on any application, to serve notice of such application on every common carrier, of every description, serving such territory, and also on every city into which or through which such carrier may desire to operate. It further requires that the commission, before issuing such certificate, shall consider the effect such additional service may have on all established carriers in said territory, that is, every carrier in the State of Missouri, in the case of an application for a certificate to serve an irregular route.

The statutes under consideration, when applied to an application to serve a regular route, for which they were designed, set forth a sound, reasonable, and logical method of procedure. But when we attempt to apply this procedure to applications for certificates covering irregular routes we are confronted with a procedure which it is impossible to follow.

For instance, from what has been said of the applicable statutes above discussed, it is apparent that a literal compliance therewith would require that the application describe in detail every highway and byway in the State of Missouri which could be or might be traveled by a motor vehicle. Such a compliance would be an utter impossibility. He would be required to name every incorporated community in the State of Missouri and the commission would then be required to serve notice on the clerk of every such city. While the latter procedure is not wholly impossible of compliance, yet the cost thereof, in postage, stationery, printing, and clerical work alone, would render such a procedure prohibitive to almost any applicant for a certificate to operate over an irregular route. A literal compliance would also require that every person, firm, association or corporation engaged in transportation anywhere in the State of Missouri, at the time of the filing of the application, be named therein and that they each be notified of the filing of same, and be permitted to be heard at the hearing thereon. The Commission would be required, according to the theory of appellants, to hear affirmative evidence regarding the effect the granting of the application would have on such transportation agencies then in the field. In the event said agencies did not see fit to come in and offer such evidence, appellants have failed to point out how the commission might procure evidence of this character unless by power of subpoenae at great cost; yet it is seriously urged that that body cannot legally grant a certificate unless it does hear same, it being urged that without such evidence and information before it the Commission cannot judicially determine that public convenience and necessity require its issue.

Literal compliance with the provisions of the statutes insofar as applications for certificates covering irregular routes, is impossible. If, then, it is held that there must be such compliance, we will have held in effect, that no certificate authorizing service over an irregular route may be legally issued. Such a decision would outlaw every common carrier of persons, and probably also of property, by motor vehicle, in the State of Missouri excepting those operating over regular routes. Such a construction would defeat the very purpose the the Legislature intended to accomplish when the law was enacted. That purpose, as declared by the Supreme Court in State ex rel. v. Atkinson, 275 Mo. 325, l. c. 337, and in State ex rel. v. Public Service Commission, 324 Mo. 270, l. c. 276, was to regulate all motor vehicle common carriers for the good of the public. Appellants urge that we make of this benevolent act a sinister and deadly weapon with which and by which one important branch of this vital industry of transportation shall be outlawed and legally abolished; and this in view of the additional fact that, until 1931, this particular branch of transportation was the favorite of the law and was specifically exempted from all regulation.

We have been cited to a number of cases from other jurisdictions. The decisions have to do with situations where procedure, similar to that mentioned here, was applied to applicants for certificates on *regular* routes. They are sound; but they do not hold that the same procedure is applicable in cases dealing with *irregular* routes. Hence such decisions "are of little or no value to us here." [State ex rel. v. Public Service Commission, 270 Mo. 429, l. c. 437.]

We prefer to follow the principle announced by the Supreme Court in State ex rel. Geaslin v. Walker, 302 Mo. 116, l. c. 121, where the court said: "One of the aids to construction of statutes is to resort to the conditions or evils which the legislation was designed to meet." After making that observation the court proceeded to declare that the Legislature meant to say "Judicial District," when the statute plainly said "county." The purpose of the Legislature was to promote the welfare of the State by regulating common carriers by motor vehicle. [See cases above cited.] It authorized the Public Service Commission to administer the law as its agent. [Lusk v. Atkinson, 268 Mo. 109.] It thereby vested the commission with certain positive powers, *expressly* conferred, and also vested it with all others necessary and proper to carry out fully and effectually all such powers so delegated, and necessary to give full effect to the act. [Public Service Commission v. Frisco Railway, 301 Mo. 157, l. c. 165; State ex rel. Kansas City Terminal Railway Company v. Public Service Commission, 308 Mo. 359.] One of the specifically authorized powers so conferred was the licensing of common carriers by motor vehicle over irregular routes. Through inadvertence it failed to provide any reasonable method of procedure to be followed by the commission in the exercise of this power. In such case the commission is authorized to make general rules where their promulgation "are necessary or proper to enable it to carry out fully and effectually all the purposes of the act." [Public Service Commission v. Frisco Railway, *supra.*] The record in this case shows that such general rules have been promulgated by the commission and were followed by it here. Such proceeding was, under the circumstances here shown, proper.

What has been heretofore said necessarily disposes, adversely to them, of all questions raised by appellants in their assignment of errors, excepting that discussed in the next succeeding paragraph.

It is contended that the order of the commission is unreasonable and unlawful. Appellant is required to establish this contention by a preponderance of the evidence in the case before they may be upheld therein. [State ex rel. City of Kirkwood v. Public Service Commission, 330 Mo. 507, l. c. 518.] In determining this question we are not bound by the *findings* of the commission but may be guided by the facts disclosed by the record before us, which are the facts upon which the commission necessarily based its order. [Lusk v. Atkinson, 268 Mo. 109, l. c. 116, 117 and 119.] The primary purpose of pub-

lic regulation of utilities is the ultimate good of the public. Protection afforded utilities is merely incidental to the attainment of that object. In arriving at a determination of this question the facts of each case are to be considered. [State ex rel. v. Atkinson, 275 Mo. 325, l. c. 337.]

Appellants say the evidence failed to establish the public convenience and necessity for the granting of the certificate. It is their position that public convenience and necessity cannot depend upon the convenience and necessity of anyone person or any group of persons. That is probably true; yet it does not follow therefrom that the commission must hear positive evidence of the effect that the granting or refusing of the certificate may have on the people living in every county, township and school district of the State. When a new railroad is built to serve a certain town or community, its construction affects, to some degree, every person in the State. The same is true when a new bus line is established over a certain designated regular route in the State. But we think when the commission considers the effect its establishment will have in that particular territory it has done all that is required, because if it benefits that community, it logically follows that the remainder of the State, to some extent, is benefited unless the contrary is positively shown. The establishment of an electric utility service in a given town does not directly benefit another community hundreds of miles away, nor does it adversely affect another similar company serving a different town. We are impressed with the declaration by the court (In re Shelton v. St. Ry. Co., 36 Atl. 362-363, 69 Conn. 626): "Sometimes, however, the necessity is one which does not affect the *whole* body politic in the *same way*, but may or may not exist in *different localities* for reasons peculiar to each." (Italics ours.)

Viewing the evidence in this case, with the above rules of law in mind, we think the action of the commission in granting the certificate was fully justified. The service sought to be established is one that does not exist in the various communities located on applicant's regular route. There are a number of schools and colleges located there that had asked for this service which could not be rendered by any carrier then serving these communities. Such a situation and demand might not exist in all communities in the State; but in the absence of a contrary showing, it is to be presumed that the entire State will benefit in the establishment of a service which will materially aid in the carrying on of educational, social and athletic activities in a large number of schools and colleges in the State. True, appellants and other carriers may lose some business; but if the public generally will be benefited thereby, such benefits may, and the commission evidently thought they did in this case, outweigh the damage resulting to the public through loss of business by any particular utility. The evidence offered by applicant sufficiently es-

tablished the public convenience and necessity for the granting of the certificate. Appellant offered no countervailing evidence whatever. They have, therefore, failed to establish by a preponderance of the evidence that the order is either unreasonable or unlawful. This point should be ruled against appellants.

The judgment is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.