The Honorable Joe Moseley State Senator, District 19 State Capitol Building Jefferson City, Missouri 65101
Dear Senator Moseley:
This opinion is in response to your question concerning the requirements of Section 493.050, RSMo 1994, in light of a recent change in mail classifications by the United States Postal Service. The information you provided with your opinion request states that the United States Postal Service has "eliminated the term `second class' and replaced it with `periodicals' in referring to one class of mail." The issue, as we understand it, is how any newspaper can meet the eligibility requirement of Section 493.050 that the newspaper be admitted to the post office as "second class matter" when there is no longer a mail classification of "second class."[1]
Section 493.050, which sets forth qualifications of a newspaper for legal publications, states, in relevant part:
 493.050. Public advertisements and orders of publication published only in certain newspapers. — All public advertisements and orders of publication required by law to be made and all legal publications affecting the title to real estate, shall be published in some daily, triweekly, semiweekly or weekly newspaper of general circulation in the county where located and which shall have been admitted to the post office as second class matter in the city of publication; shall have been published regularly and consecutively for a period of three years; shall have a list of bona fide subscribers voluntarily engaged as such, who have paid or agreed to pay a stated price for a subscription for a definite period of time;. . . . [Emphasis added.]
We note that 61 Fed. Reg. 10068, 10123-24 (1996), contains the following statement:
 Effective July 1, 1996, second-class mail was renamed Periodicals. This name change does not alter the status of authorized publications; second-class mailing privileges are now referred to as Periodicals mailing privileges and have comparable eligibility standards. [Emphasis added.]
Statutory construction must always seek to find and further legislative intent. Centerre Bank of Crane v. Director ofRevenue, 744 S.W.2d 754, 759 (Mo. banc 1988). We "should use rules of construction which subserve rather than subvert the legislative intent." Christian Disposal, Inc. v. Village ofEolia, 895 S.W.2d 632, 634 (Mo.App. 1995). "The standard rule of construction calls for a statute to be given a reasonable interpretation in light of the legislative objective. [Citations omitted.] Moreover, the true intention of the framers must be followed and where necessary the strict letter of the act must yield to the manifest intent of the Legislature. [Citations omitted.]" BCI Corporation v. Charlebois Construction Co.,673 S.W.2d 774, 780 (Mo. banc 1984).
State ex rel. North British Mercantile Ins. Co. v.Thompson, 52 S.W.2d 472 (Mo. banc 1932) involved a statute requiring certain funds of the Missouri superintendent of insurance to be protected by a surety bond even though it was practically impossible to acquire such surety bonds at that time. The circuit court had issued all order allowing the funds to be protected by the pledge of government bonds in lieu of the statutorily-required surety bond. In discussing the inability to comply literally with the statute, the Missouri Supreme Court stated:
 The relief demanded, therefore, is that this court order the superintendent of insurance to perform an impossibility. It is stated in the return, and admitted in the motion for judgment on the pleadings, that, on account of the depressed business conditions and heavy losses of surety companies by reason of failed banks and similar institutions, it became practically impossible for depositories to procure surety bonds except at a prohibitive cost. The order of court, recited in the return, states that surety companies have adopted a policy of refusing to write bonds securing deposits in banks. Naturally no bank would accept the deposits under such conditions. The order of March 5, 1931, was an attempt to meet the conditions of the statute by requiring the title to government bonds and state bonds offered as security to be vested in the superintendent of insurance as trustee; such title to be divested when the depository accounts for and pays over the money. That method was not satisfactory to the insurance companies. Objections to it as effective security for preferred funds naturally appear.
 The order of January 28, 1932, provided that the funds now or hereafter accumulated be invested in short-term obligations of the United States which shall be placed in the safety deposit boxes. Such securities could be cashed at any time, and in the opinion of the circuit court afford ample security. In the court's inherent powers it had authority to make that sort of provision for securing the funds in the absence of ability to comply literally with the statute. . . .
 The circuit court has ample authority to determine in what way ample security may be given for such funds.
Id. at 474-475. The Missouri Supreme Court did not interfere with the order of the circuit court.
In State ex rel. Pitcairn v. Public Service Commission,111 S.W.2d 982 (Mo.App. 1937), the receivers for the Wabash Railway Company challenged a certificate granted by the Public Service Commission allowing an applicant to operate buses over an irregular route. One challenge by the Wabash receivers to the certificate was the failure of the applicant to comply with the statute setting forth the procedure for applying for a certificate. The court discussed the impossibility of complying with the statute and stated:
 But, when we attempt to apply this procedure to applications for certificates covering irregular routes, we are confronted with a procedure which it is impossible to follow.
 For instance, from what has been said of the applicable statutes above discussed, it is apparent that a literal compliance therewith would require that the application describe in detail every highway and byway in the state of Missouri which could be or might be traveled by a motor vehicle. Such a compliance would be an utter impossibility. He would be required to name every incorporated community in the state of Missouri, and the commission would then be required to serve notice on the clerk of every such city. While the latter procedure is not wholly impossible of compliance, yet the cost thereof, in postage, stationery, printing, and clerical work alone, would render such a procedure prohibitive to almost any applicant for a certificate to operate over an irregular route. A literal compliance would also require that every person, firm, association, or corporation engaged in transportation anywhere in the state of Missouri, at the time of the filing of the application, be named therein, and that they each be notified of the filing of same, and be permitted to be heard at the hearing thereon. The commission would be required, according to the theory of appellants [Wabash receivers], to hear affirmative evidence regarding the effect the granting of the application would have on such transportation agencies than in the field. In the event said agencies did not see fit to come in and offer such evidence, appellants have failed to point out how the commission might procure evidence of this character unless by power of subpoena at great cost; yet it is seriously urged that that body cannot legally grant a certificate unless it does hear same, it being urged that, without such evidence and information before it, the commission cannot judicially determine that public convenience and necessity require its issue.
 Literal compliance with the provisions of the statutes in so far as applications for certificates covering irregular routes are concerned, is impossible. If, then, it is held that there must be such compliance, we will have held, in effect, that no certificate authorizing service over an irregular route may be legally issued. Such a decision would outlaw every common carrier of persons, and probably also of property, by motor vehicle, in the state of Missouri excepting those operating over regular routes. Such a construction would defeat the very purpose the Legislature intended to accomplish when the law was enacted. . . .
 We prefer to follow the principle announced by the Supreme Court in State ex rel. Geaslin v. Walker, 302 Mo. 116, loc cit. 121, 257 S.W. 470, 471, where the court said: "One of the aids to construction of statutes is resort to the conditions or evils which the legislation was designed to meet." After making that observation, the court proceeded to declare that the Legislature meant to say "Judicial District," when the statute plainly said "County."
 The purpose of the Legislature was to promote the welfare of the state by regulating common carriers by motor vehicle. . . . Through inadvertence it failed to provide any reasonable method of procedure to be followed by the commission in the exercise of this power. In such case the commission is authorized to make general rules where their promulgation "are `necessary or proper to enable it to carry out fully and effectually all the purposes' of the act." [Citation omitted.] The record in this case shows that such general rules have been promulgated by the commission and were followed by it here. Such proceeding was, under the circumstances here shown, proper.
Id. at 985-986. The court concluded the issuance of the certificate granted by the Public Service Commission was fully justified and ruled against the appellants, the Wabash receivers.
In the situation about which you are concerned, because the United States Postal Service no longer uses the term "second class" mail, it is impossible to comply with the requirement of Section 493.050 that the newspaper "shall have been admitted to the post office as second class maker." In State ex rel. NorthBritish Mercantile Ins. Co. v. Thompson, supra, the appellate court deemed proper the pledge of government bonds in lieu of the statutorily-required surety bond where it was impossible to obtain the statutorily-required surety bond. Similarly, in Stateex rel. Pitcairn v. Public Service Commission, supra, the court approved the issuance of a certificate by the Public Service Commission allowing an applicant to operate buses over an irregular route even though the applicant failed to strictly comply with the procedures for applying for a certificate because strict compliance with the statute was impossible. In the present situation, strict compliance with the "second class" requirement is impossible because the United States Postal Service no longer uses the term "second class." However, the new term for what formerly was "second class" is "periodicals." The Federal Register quoted previously indicates that "periodicals" has "comparable eligibility standards" to what formerly was known as "second class." The apparent intent of the legislature in Section493.050 was to impose the eligibility standards associated with "second class" mailings. Those same eligibility standards now apply to "periodicals" so that by complying with the eligibility standards for "periodicals," the apparent legislative intent is fulfilled. Therefore, we conclude that a newspaper which has been admitted to the post office as "periodicals" satisfies the requirement of Section 493.050 that the newspaper shall have been admitted to the post office as "second class" matter.
CONCLUSION
It is the opinion of this office that a newspaper which has been admitted to the post office as "periodicals" satisfies the requirement of Section 493.050, RSMo 1994, that the newspaper "shall have been admitted to the post office as second class matter."
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General
[1] A second-class mail eligibility requirement is set forth in Article VI, Section 19 of the Missouri Constitution. As rules of statutory construction also apply to construing constitutional provisions, State ex inf. Martin v. City of Independence,518 S.W.2d 63, 65 (Mo. 1974), our opinion set forth herein would also apply to that constitutional provision.